**Bobby Woodrow MITCHELL,
Respondent,**

v.

**Devin Odale MITCHELL, Appellant.**

No. SD 30775.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 20, 2011.

---

5. All rule references are to Missouri Court Rules (2011).

Richard L. Schnake, Alison K. George, Neale & Newman, L.L.P., Springfield, for Appellant.

W. Henry Johnson, Neosho, for Respondent.

DANIEL E. SCOTT, Judge.

Mother[1] appeals the denial of her request to relocate her minor children from Missouri to Oklahoma. The trial court, after hearing the evidence, found "that

---

1. For convenience and privacy, we refer to the parties as "Mother" and "Father," and to their children, aged nine and six respectively as of the hearing date, as "Son" and "Daugh- ter." Statutory citations are to RSMo as amended through 2005; rule references are to Missouri Court Rules (2010).

there are insufficient reasons to justify" Mother's proposed relocation.[2] Mother argues that the trial court's judgment is not supported by substantial evidence or, alternatively, is against the weight of the evidence. *See Mantonya v. Mantonya,* 311 S.W.3d 392, 395 (Mo.App.2010) (citing *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)).

## Sufficiency of Evidence

■ Mother does not explain why this judgment needs evidentiary support,[3] but if it does, Father's testimony provides it. Thus, we reject Mother's first argument.

## Weight of Evidence

■ Alternatively, Mother urges that the judgment is against the weight of the evidence. We can reverse on this basis only when we firmly believe the judgment is wrong. *Houston v. Crider,* 317 S.W.3d 178, 186 (Mo.App.2010). *See also Mantonya,* 311 S.W.3d at 395. Weight of evidence means weight in probative value, not the quantity or amount of evidence. *Houston,* 317 S.W.3d at 186. We consider evidence both pro and con, but defer to the trial court's credibility determinations, explicit or implicit. *Id.* at 187. Indeed, absent explicit findings, we presume implicit trial court findings that support the result reached. *Mund v. Mund,* 7 S.W.3d 401,

403 (Mo. banc 1999) (citing Rule 73.01(a)(3)). Because a trial court may accept all, part, or none of a witness's testimony, "simply producing evidence that, if believed, would be sufficient to support an award is not the same thing as convincing the fact-finder." *Martz,* 323 S.W.3d at 58.

Relocation denials are so rarely reversed on against-the-weight-of-evidence grounds that Mother cites no such case and we found only two.[4] Of course, this does not preclude review because relocation cases are fact specific. *Mantonya,* 311 S.W.3d at 402.

### Facts, Hearing, and Evidence

Mother and Father married in 1999 and lived in McDonald County. When their marriage was dissolved in 2006, they were granted joint legal and joint physical custody of their children, with Mother's address to be used for mailing and educational purposes. The children primarily live with Mother during the school year and with Father in the summer.

After living several different places in McDonald County, Mother decided to move the children to Grove, Oklahoma. Father objected, a hearing was held, and the court denied Mother's relocation request in September 2009.

---

**2.** Neither party requested Rule 73.01 findings of fact and conclusions of law.

**3.** By statute, it was Mother's burden to prove her good faith and, perhaps more importantly, that relocation was in the children's best interest. § 452.377.9. Yet the general rule below, for reasons unknown, seems rarely cited in relocation cases:

Where a party has the burden of proof on an issue and where the evidence presented thereon is not conclusive, a judgment in favor of the opposing party requires no evidentiary support because the trier of fact may disbelieve the proponent's uncontradicted or uncontroverted evidence. Mother

has not cited any authority that would remove her from the application of this general rule. Nor has she cited any authority that would prevent Father from falling under the general rule that the party not having the burden of proof on an issue need not offer any evidence concerning it.

*Martz v. Martz,* 323 S.W.3d 53, 57–58 (Mo. App.2010) (citations, quotation marks, and brackets omitted).

**4.** *See Wightman v. Wightman,* 295 S.W.3d 183 (Mo.App.2009); *Fuchs v. Fuchs,* 887 S.W.2d 414 (Mo.App.1994).

Mother continued to pursue a move to Grove. She bought a house there and, in November 2009, again notified Father of her intent to relocate the children. Again, Father objected. Another hearing was held in June 2010. The testimony and arguments there may be summarized as follows.

Mother claimed that moving to Grove would not change Father's parenting time; the children would be just as close to Father's Missouri residence; and relocation would be in the children's best interest.[5] Father countered that the move would interfere with his parenting time; many of the alleged relocation benefits could be achieved if the children stay in Missouri; and that the children's alleged difficulties in Missouri were due to Mother's poor choices.

More specifically, Mother testified that she stays in her Grove home when the children are with Father, but she lives in a trailer in Pineville, Missouri during the school year when she has the children. Father wanted the children to have a better home than the Pineville trailer, but Mother rejected his suggestion that she and the children relocate to a better home in Anderson, Missouri where Son attends school.

Mother asserted that a move to Grove would decrease the children's travel time to and from school and daycare. The Pineville trailer is less than an eight-minute drive from Son's school, but Mother elected not to drive Son there. Rather, she had Son ride the bus for about three hours each school day. Mother also chose to send Son to school and Daughter to daycare in different locations, despite Father's request to send both to the same place. Although she would not enroll Son and Daughter at the same Missouri location, Mother claimed the children would benefit by relocation because she would enroll them at the same school and daycare in Grove.

Father maintained that Son would not be well served by changing schools. Son has an individualized educational program (IEP) because he sustained a traumatic brain injury when he was 18 months old. He thrives on routine, but becomes anxious in new situations to the point that he shuts down or experiences small seizures. In the McDonald County School District, Son is in a class of five and receives substantial one-on-one attention. Although Grove has similar school facilities and could provide similar special education services, no evidence was presented that Grove schools would provide a better educational experience for either child.

Mother asserted that relocation would improve her ability to respond to emergencies, take the children to appointments, and attend daytime school events. Mother works in Grove on weekdays from 8 a.m. to 5 p.m. She cannot attend school parties or daytime school events because her workplace is too far from the children's schools. Yet even if the children went to school in Grove, Mother has a limited number of paid leave days. By contrast, Father is self-employed and can miss work for school events or when the children have emergencies. Father visits the children at their schools, attends school functions, and sometimes eats meals at school with the children. Father has offered to take the children to medical appointments, but Mother has refused the offer.

As for other services available to the children, the court received documentation

**5.** Unlike many relocation cases, this one does not involve Mother's remarriage or a new job. Mother had her current job before her chil-

dren were born and had worked there nearly 12 years as of the hearing date.

that Father applied for Son to be evaluated by and receive services from Missouri's Division of Developmental Disabilities. Mother testified that the children could get Cherokee Nation benefits, such as free health care,[6] school supplies, clothing, and basic food supplies. Mother admitted that her testimony was based on conversations with others. She had never applied for benefits for the children, nor did she know if Oklahoma residency was a prerequisite for benefits.

The court also heard evidence about the children's extracurricular activities in McDonald County. They attend vacation bible school and church camp, and they show calves at the McDonald County Fair. The children had been involved in sports, but Mother restricted that participation after her first request to relocate was denied.

### Analysis

 Mother's evidence did not persuade a trial court which heard all the testimony and, as already noted, found "insufficient reasons to justify" Mother's proposed relocation.[7] Our careful review of the record has not firmly convinced us that the trial court was wrong. *Houston*, 317 S.W.3d at 186. We need cite only a few reasons why.

First, Mother called only two witnesses other than herself. A special services director/school psychologist from Grove described educational opportunities similar to, but not necessarily better than, those in McDonald County. The other witness, a human resource officer from Mother's employer, addressed little-disputed matters regarding Mother's work history, schedule, and paid leave time. None of this testimony tips the scales in favor of relocation.

Second, Mother emphasizes Cherokee Nation benefits that she never applied for and for which she offered no documentary evidence, called no knowledgeable witness, and could not answer basic eligibility questions at the hearing. The trial court's implicit discounting of this factor was well within its discretion.

Third, the trial court was not compelled to rule for Mother, even if her Oklahoma house is "nicer" and the relatively short move would not change the existing custody order, particularly when one of Father's principal objections is the change in Son's school. *See Mantonya, supra.*

 "We are mindful" of appellate opinions upholding longer-distance relocations, but "such seemingly inconsistent outcomes are wholly consistent with the fact that each request for relocation must be determined based on the unique and particular facts of the case presented to the trial court." *Mantonya*, 311 S.W.3d at 402. Our deference in relocation cases "reflects the trial court's superior position to evaluate the facts in each case, and to assess, based on those unique facts, the best interests of the children." *Id.* This is true even when the evidence, as in this case, might support a different result. *Robinson*, 338 S.W.3d at 876. Mother's second argu-

---

6. Mother testified that Son would continue to see his pediatrician and specialists, so he would still have to be covered by health insurance because the Cherokee Nation does not provide those services.

7. Mother arranges much of her argument around § 452.375.2's best interest factors. Trial courts in post-dissolution relocation proceedings may consider all relevant "best interest" considerations, not just statutory factors. *Robinson v. Robinson*, 338 S.W.3d 868, 871–72 (Mo.App.2011). Such judgments need not include statutory best interest findings, at least where (as here) no party seeks to modify the custody arrangement. *See Mantonya*, 311 S.W.3d at 398, an opinion which surveys and gamely attempts to harmonize case law on these issues.

ment, therefore, also fails. The judgment is affirmed.

FRANCIS, P.J., and BATES, J., concur.