

# Missouri Court of Appeals

## Southern District

### Division One

CARL E. SMITH and MARGARITA SMITH,   )
   )
        Appellants,   )
   )
    vs.   )     No. SD32604
   )
GREAT AMERICAN ASSURANCE   )     FILED: June 3, 2014
COMPANY, GREGORY HERKERT, and   )
THE STOLAR PARTNERSHIP, LLP,   )
   )
        Respondents.   )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

#### Honorable Michael J. Cordonnier, Judge

#### AFFIRMED

Carl and Margarita Smith owned motel property subject to a mortgage that Respondents purported to foreclose over the Smiths' objection. The Smiths sued. The parties' lawyers quickly explored settlement, reached agreement, and circulated settlement documents which the Smiths refused to sign.

Respondents moved to enforce the settlement. After an evidentiary hearing, the court granted the motion and entered judgment accordingly.

The Smiths appeal, raising three points. We affirm.

# Background[1]

Paul Hasty represented the Smiths at all times; Rod Loomer facilitated negotiations on Respondents' behalf.  To quote the judgment, the settlement terms "are not in dispute," but

> a general understanding of those terms is important for further consideration of the issues. The settlement agreement contemplated a "walk away" deal.   The substance of the agreement was set forth in Attorney Hasty's letter of August 22, 2012, addressed to Attorney Loomer, which proposed, inter alia,
>
> > ... Great American can consider the loan paid and release the mortgage on the property thereby vesting title in the Smiths free and clear of any interest of the bank or Great American.
>
> These terms were accepted by Defendants, as was communicated by Attorney Loomer in his letter dated August 24, 2012, to Attorney Hasty. The settlement terms were again confirmed by Attorney Hasty's letter to Attorney Loomer dated August 30, 2012, referencing recent telephone conversations.  No money was going to be exchanged as part of the settlement.

Hasty later testified that he had discussed settlement with Carl Smith, and the August 22 letter "was my understanding of my authority from Mr. Smith."[2]  Hasty did not discuss settlement directly with Mrs. Smith, who from Ukraine, was not a native English speaker, and would direct Hasty to "talk to Carl" when Hasty would call her about the case.  "So," as Hasty explained, "rather than Mrs. Smith telling [Hasty] or

---

[1] We summarize the background as we must view it on appeal, *i.e.*, most favorably to the trial court's judgment, disregarding all contrary inferences and evidence. **Kenney v. Vansittert**, 277 S.W.3d 713, 720 (Mo.App. 2008).

[2] This letter actually was a counteroffer which began by rejecting Respondents' initial offer.  We quote the salutation and opening paragraph:

Dear Mr. Loomer:

I've had the opportunity to talk to Mr. Smith about the offer that was extended, i.e. Great American would release any claim on the property as long as the Smiths paid the $41,000.00 balance alleged by Great American.  That offer is declined.

2

speaking with [Hasty] about the case, it was her direction for [Hasty] to go to Carl Smith."

Sometime in September, after Hasty had copied the Smiths on the August 22 offer letter and his August 29 and 30 letters confirming settlement, Mrs. Smith returned to Ukraine and stayed there until late October.

A week after Loomer circulated formal settlement documents for execution, Hasty reluctantly reported that his clients were "no longer willing to settle the case on the terms previously agreed." Seven weeks post-settlement, after Respondents moved to enforce, Carl Smith suggested for the first time that his wife never agreed to settle and he "had no authority to speak for her on the issue." Hasty then sent Loomer two mid-October letters, reiterating that Hasty "thought a settlement agreement was reached" and "I've made it very clear to you that I thought we had the case settled," but his clients were "taking the position that counsel did not have authority to enter the agreement that was entered. I certainly thought I did, but that was based on an assumption that Mr. Smith was speaking for Margarita Smith."

Hasty, Loomer, and both Smiths testified at the November 19 enforcement hearing. That a settlement had been reached was "not in dispute," to quote the Smiths' post-hearing brief. Yet they denied being bound, arguing that Mrs. Smith was not consulted and had not agreed to settle the case. Secondarily, they argued the statute of frauds, a non-pleaded defense first mentioned after all testimony and evidence had been admitted at the hearing.

The court rejected both arguments. As indicated above and not challenged on appeal, the court observed that the Smiths "squarely admit that their attorney indeed reached an agreement to settle the dispute." The court then found that Hasty had

3

authority to represent both of the Smiths and negotiate a binding settlement on their behalf. Finally, the court found that the statute of frauds did not bar enforcement. After entry of a final judgment, the Smiths brought this appeal.

**Standard of Review / Points on Appeal**

As the Smiths repeatedly acknowledge, we can reverse this bench-tried judgment *only* if no substantial evidence supports it, *or* it is against the weight of the evidence, *or* it erroneously declares or applies the law. ***Murphy v. Carron***, 536 S.W.2d 30, 32 (Mo. banc 1976). It thus seems self-evident that the Smiths should identify the specific ***Murphy*** claim they assert as to each of their points, preferably within the point itself. *See* Rule 84.04(d)(1)(A) & (B) (points *shall* identify the challenged actions and "the legal reasons for the appellant's claim of reversible error …").

Why? Because each ***Murphy*** ground is a separate, distinct legal claim. That is, "an 'against-the-weight-of-the-evidence' analysis which is distinctly different than a claim that a judgment is not supported by substantial evidence," ***J.A.R. v. D.G.R.***, No. SC93649, slip op. at 9 (Mo. banc Apr. 1, 2014), obviously differs also from claims that the trial court erroneously declared or applied the law. In turn, this means each ***Murphy*** ground is proved differently from the others *and* is subject to different principles and procedures of appellate review.[3]

---

[3] For example, in "against the weight of evidence" claims, we must "defer to the trial court's credibility determinations, explicit or implicit," and can reverse "only when we firmly believe the judgment is wrong." ***Mitchell v. Mitchell***, 348 S.W.3d 816, 818 (Mo.App. 2011). "Where a misapplication of law is asserted, our review is *de novo*." ***Jackson v. Mills***, 142 S.W.3d 237, 240 (Mo.App. 2004). For differences in proof and review of "no substantial evidence" vs. "against the weight" claims, see ***J.A.R.***, slip op. at 9; ***Houston v. Crider***, 317 S.W.3d 178, 186-89 (Mo.App. 2010). For further support that these are distinct legal claims, see ***J.A.R.***, slip op. at 10 n.10 and cases cited therein.

None of the Smiths' points expressly identify a ***Murphy*** ground. This is no real problem as to Points II and III (plainly complaints that the trial court misapplied the law), but the ***Murphy*** claim is less obvious in Point I:

> The trial court erred in finding that Plaintiffs' attorney had either actual or apparent authority to negotiate a settlement of the claim on Plaintiffs' behalf because Plaintiffs' attorney did not have such authority in that Plaintiffs did not authorize their attorney to do so, nor did Plaintiffs themselves agree to the purported settlement.

To reiterate, we can reverse only on a ***Murphy*** ground, each of which differs from the others both as to proof and appellate review. Ultimately, we read Point I to assert that no substantial evidence supported the trial court's fact findings, necessary to the judgment, as to Hasty's authority. Our interpretation rescues the point so we can review it,[4] but the underlying complaint still fails for several independent reasons next summarized.

### Point I – Authority

The Smiths' first and fundamental problem is their failure to effectively assert a "no substantial evidence" claim. *See **J.A.R.**,* slip op. at 12 & n.12; ***Houston***, 317 S.W.3d at 186-88.[5] Instead, their "argument on this point ignores the testimony and evidence favorable to the circuit court's findings and conclusions and merely recites evidence and purported inferences favorable to [their] position." ***J.A.R.***, slip op. at 14.

---

[4] Tipping the scales for us are assertions in the brief's Point I argument that "the only evidence is such that Mr. Hasty did not have express authority to bind Plaintiffs to the purported settlement agreement," and "there is no evidence that Mrs. Smith was consulted about or agreed to the settlement agreement, precluding any conclusion that Mr. Hasty had apparent authority to do so. Therefore, authority – both actual and apparent – was truly lacking here." Having discerned a ***Murphy*** complaint "from the argument portion of this point relied on, we shall address the issue raised." ***Jones v. Jones***, 285 S.W.3d 356, 359-60 n.5 (Mo.App. 2009).

[5] Indeed, this point would fail even if we viewed it as an "against the weight" claim. *See **Houston***, 317 S.W.3d at 187-89.

"Not only does [this] argument ignore our standard of review, it ignores the law that the circuit court can believe all, part, or none of the testimony of any witness." *Id*. at 12 (footnote omitted). "It seems obvious, from the findings and conclusions contained in the judgment, that the circuit court put little or no stock in various factual assertions made by [the Smiths]," *id*. at 14 n.14, who now fail "to identify favorable evidence in the record or explain why that evidence and its reasonable inferences are such that the court could not reasonably decide that [Hasty had authority]. Without any of this analysis, [the] argument lacks any analytical or persuasive value." *Id*. at 12 n.12.

In summary, Point I initially fails because its argument "ignores the testimony and evidence favorable to the circuit court's findings and conclusions and merely recites evidence and purported inferences favorable to [its] position," disregards our standard of review, and is "of no analytical or persuasive value." *Id*. at 14.

> To support a favorable decision for [the Smiths] on this point would require this Court to devise and articulate its own demonstration of how the omitted favorable evidence, either by itself or considered along with the partial favorable evidence included by [the Smiths] in their argument, is not substantial evidence .... Such action on our part would thrust us into becoming an advocate on [the Smiths'] behalf; a role we are prohibited from assuming.

*Houston*, 317 S.W.3d at 189.

We often see the error addressed in *J.A.R.* and *Houston* and repeated here by the Smiths. It may aid future appellants if we try to restate certain principles in simplest terms.

We are one-sided when we check the record for sufficiency of evidence. We ignore everything that could help the appellant, seeing only what might help the respondent. The resulting slant can be so severe that we rarely follow this particular rule (even when we cite it) strictly when we write our statement of facts. Outside

6

readers require more context to understand a case, so our opinions often cite facts that we cannot consider in deciding if any evidence supports the judgment.

Our tunnel vision is driven, not by credibility *per se*, but relevance. Consider a shopping analogy. If we need a red shirt, we ignore other colors. Nothing is wrong with other shirts, but they do not fit our need. They are not relevant to our search. Salespersons who show us other shirts, not appreciating our specific need, waste their time and ours.

Likewise, in seeing if any evidence *supports* a judgment, contrary proof is irrelevant. And if evidence *does* support the judgment, no amount of counter-proof erases it. This is why a "no substantial evidence" argument focused on proof and inferences that favor the appellant, while minimizing those favorable to the judgment, disregards our standard of review and is "of no analytical or persuasive value." **J.A.R.**, slip op. at 14. This is the first reason that the Smiths' Point I argument fails.

Even if we ignore that problem, Hasty was presumed to have settlement authority, the Smiths bore a "substantial burden" to overcome that presumption, and the issue was one of fact. **Eaton v. Mallinckrodt, Inc.**, 224 S.W.3d 596, 597, 598, 599 (Mo. banc 2007). After an evidentiary hearing ("[b]y far the most desirable approach," *id*. at 599), the trial court found this fact issue against the Smiths.

**Kenney** is instructive. There, as here, the client's attorney of record filed pleadings and negotiated a resolution with opposing counsel. 277 S.W.3d at 721. Consistent with our supreme court's **Eaton** observations, the **Kenney** court noted that "authority is presumed to be present in the client's attorney of record and where the attorney undertakes negotiations with the opposing party." **Id**. "Thus, [counsel] had *prima facie* authority to settle the claims; [the client] consequently bore a heavy burden

7

to rebut this presumption." *Id*.

> Our courts have only permitted parties to avoid settlements concluded by their attorneys where the evidence has failed to raise this presumption of authority, or where the fact-finder is truly convinced authority is lacking .... The trial court is free to believe or disbelieve a client's testimony about an attorney's authority. The trial court's order shows it was not convinced authority was lacking in [the client's] attorney of record. [The client] failed to rebut the presumption of [counsel's] authority to settle his [claims]; we see no basis to disturb the trial court's findings.

*Id*. (citations omitted). The same can be said in this case.

Finally, even if we further ignore the presumption, we cannot condemn the trial court's finding of authority if we "view the evidence in the light most favorable to the trial court's judgment and disregard all contrary inferences and evidence," *id*. at 720, and recall a trial judge's right to "disbelieve a client's testimony about an attorney's authority." *Id*. at 721.

The argument that Mrs. Smith never authorized settlement fares no better. "In the husband-wife context, one spouse cloaks the other with apparent authority to act on his or her behalf if the facts and circumstances surrounding the transaction give rise to a reasonable and logical inference that the non-acting spouse empowered the acting spouse to act for him or her." *Cohn v. Dwyer*, 959 S.W.2d 839, 843 (Mo.App. 1997), *quoted in* *Rosehill Gardens, Inc. v. Luttrell*, 67 S.W.3d 641, 647 (Mo.App. 2002). *See also* *Stoner v. Director of Revenue*, 358 S.W.3d 514, 520 n.12 (Mo.App. 2011).

Hasty, who represented and had dealt with both spouses, clearly believed Mr. Smith also spoke for his wife in rejecting Respondents' first offer and authorizing the August 22 counteroffer that Hasty conveyed and Respondents promptly accepted. Such was "a reasonable and logical inference" from the record as we must view it, including Hasty's testimony and Mrs. Smith's "talk to Carl" directions when Hasty would call her

8

about the case. Moreover, the trial court heard Mrs. Smith testify, knew English was not her first language, and could reasonably infer (like Hasty, apparently) why she might direct her lawyer to deal with Mr. Smith instead.

We need not list all evidence or inferences supporting the court's finding of authority. At least some evidence of record supports it and the trial judge was in the best position to decide that issue. *Parks v. MBNA Am. Bank*, 204 S.W.3d 305, 313 (Mo.App. 2006).

For each and all of these reasons, Point I fails.

### Point II – Statute of Frauds

Although Point II cites the statute of frauds, no such claim was preserved. *See Norden v. Friedman*, 756 S.W.2d 158, 162 (Mo. banc 1988) (failure to plead statute of frauds or object to trial testimony regarding oral contract constitutes waiver); *Stander v. Szabados*, 407 S.W.3d 73, 80 (Mo.App. 2013).

The Smiths did not plead or otherwise raise the statute of frauds prior to the enforcement hearing; even had they done so, "failure to object to the testimony of the oral agreement would waive any protection of the statute." *Crawford v. Detring*, 965 S.W.2d 188, 192 (Mo.App. 1998); *see also Owen v. Hankins*, 289 S.W.3d 299, 304 n.7 (Mo.App. 2009); *Sheinbein v. First Boston Corp.*, 670 S.W.2d 872, 879 (Mo.App. 1984). That is what happened. All settlement testimony and evidence was admitted at the hearing without any statute of frauds objection, resulting in waiver.

Whether the defense was waived, as we find, or failed on the merits as the trial court found, the outcome is the same. We are more concerned with a correct result than the route taken to reach it. *Missouri Soybean Ass'n v. Missouri Clean Water Comm'n*, 102 S.W.3d 10, 22 (Mo. banc 2003). We will affirm if a judgment "is correct

9

on any ground supported by the record, regardless of whether the trial court relied on that ground." ***Id***. Point denied.

## Point III – Mortgage Release

Finally, the Smiths allege that Respondents have not released their mortgage as the judgment requires, but fail to show why Rule 74.07 does not offer an adequate remedy.[6] We deny Point III and affirm the judgment.

DANIEL E. SCOTT, J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, P.J. – CONCURS IN RESULT IN SEPARATE OPINION

WILLIAM W. FRANCIS, JR., C.J. – CONCURS AND FILES SEPARATE CONCURRING OPINION

---

[6] Quoting that rule in pertinent part:

> If a judgment directs a party to execute or deliver a deed or other document or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court, and the act when so done has like effect as if done by the party. On application of the party entitled to performance, a writ of attachment or sequestration shall issue against the property of the disobedient party to compel obedience to the judgment. The court may also adjudge the party in contempt.



# Missouri Court of Appeals

## Southern District

### Division One

CARL E. SMITH and MARGARITA )
SMITH, )
                             )
       Plaintiffs-Appellants, )
                             )
       vs. )            No. SD32604
                             )
GREAT AMERICAN ASSURANCE )      **Filed:** June 3, 2014
COMPANY, GREGORY HERKERT )
AND THE STOLAR PARTNERSHIP, LLP,)
                             )
       Defendants-Respondents. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Michael J. Cordonnier, Circuit Judge

## CONCURRING IN RESULT

As noted in the majority opinion, the Smiths, in their first point, challenge the judgment that found Hasty[1] had either actual or apparent authority to "negotiate a binding settlement" of the claim on the Smiths' behalf because the Smiths neither authorized their attorney to do so, nor agreed to the purported settlement. I commence my analysis with

---

[1] Hasty represented the Smiths in this appeal but was a witness at the hearing to enforce the judgment.

Rule 4-1.2(a), of the Missouri Court Rules.[2]  Every attorney in Missouri is aware of this rule:

> (a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to Rule 4-1.2(c), (f) and (g), and shall consult with the client as to the means by which they are to be pursued.  A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter.

Rule 4-1.2(a).

It is without question that, in Missouri, an attorney must have express authority to bind his client to a settlement agreement and, conversely, there is no implied authority to settle a client's claim by the mere fact of an attorney's employment.  *Barton v. Snellson*, 735 S.W.2d 160, 162 (Mo. App. E.D. 1987); *Samland v. J. White Transp. Co., Inc.*, 675 S.W.2d 92, 95-96 (Mo. App. W.D. 1984).  "[A]n attorney's implied authority is limited to procedural matters.  It does not extend to the surrender of any of the client's substantive rights."  *Barton*, 735 S.W.2d at 162.

> Settlement decisions have the potential both to benefit and harm the client. Rule 4–1.2(a) requires a client to be in control of the decisions that have the capacity to affect the client profoundly, specifically referencing the decision whether to accept a settlement of the case, so an attorney may not execute a contract that gives the attorney the sole right to settle a case.

*In re Coleman*, 295 S.W.3d 857, 864 (Mo. banc 2009).

At issue is whether Hasty had actual or apparent authority.  To be sure, as stated in the majority opinion, there is case law supporting the proposition that Hasty was presumed to have settlement authority and that the Smiths bore a "substantial burden" to overcome that presumption.  The problem is the majority opinion is based upon "the trial judge's right to 'disbelieve a client's testimony about an attorney's authority.'"  The judgment must still be based upon evidence.  The evidence before the trial court was the

---

[2] All rule references are to Missouri Court Rules (2014), unless otherwise specified.

written correspondence between the attorneys and the trial testimony by Loomer, Hasty, and the Smiths.

The judgment states:

> The substance of the agreement was set forth in Attorney Hasty's letter of August 22, 2012, addressed to Attorney Loomer, which proposed, inter alia,
>> ". . . Great American can consider the loan paid and release the mortgage on the property thereby vesting title in the Smiths free and clear of any interest of the bank or Great American."
>
> These terms were accepted by Defendants, as was communicated by Attorney Loomer in his letter dated August 24, 2012, to Attorney Hasty. The settlement terms were again confirmed by Attorney Hasty's letter to Attorney Loomer dated August 30, 2012, referencing recent telephone conversations.

The problem with the court's analysis is that the terms were not accepted by Loomer.

A more complete portion of the letters indicates several important facts.

Defendants made an offer which was not provided to us and, on August 22, 2012, Hasty sent a letter to Loomer:

> I've had the *opportunity to talk to Mr. Smith* about the offer that was extended, i.e. Great American would release any claim on the property as long as the Smiths paid the $41,000.00 balance alleged by Great American. That offer is declined.
>
> . . . .
>
> Our legal position, based on my evaluation, is really quite simple. [Hasty set out the Smiths' legal propositions, including a claim for punitive damages for the actions of Great American.]
> *Mr. and Mrs. Smith will settle the claim at this point either one of two ways. Either the Smiths can be paid the difference between the $540,000.00 sale price and the amount Great American paid to purchase the loan (approximately $41,000.00) or Great American can consider the loan paid and release the mortgage on the property thereby vesting title in the Smiths free and clear of any interest of the bank or Great American.*

(Emphasis added.)

An analysis of this letter makes it clear, first, that Hasty felt obligated to speak to Mr. Smith, that he did speak to Mr. Smith, and that the initial offer was declined. Hasty made no reference to speaking with Mrs. Smith. He either inadvertently omitted her from the letter or had no conversation with her or did not feel it was necessary to converse with her. His letter, then, was a rejection of Defendants' offer and a proposed counter-offer. Loomer, on behalf of Defendants, responded to that counter-offer on August 24, 2012:

> This will acknowledge receipt of your letter of August 22, 2012. I have discussed the same with my clients as well as the attorneys representing Great American. Great American is willing to consider the loan paid and will release the mortgage on the property thereby vesting title in the Smiths free and clear of any interest of the bank or Great American. *Each party will be responsible for attorney's fees and costs incurred, and the terms of the settlement will be confidential. I will circulate to you, Scott Kreamer, and Jeff Love those releases for review.*

(Emphasis added.)

What is clear from this correspondence from Loomer is that the attorneys for Defendants also felt the need to discuss the offer with their clients, that they did discuss the offer with their clients, and that they were willing to accept the second option that had been suggested, with the additional terms of each paying their own attorney's fees and costs and that it be a confidential settlement.[3] Although Loomer testified that he considered this letter as an acceptance of the Smiths' offer and the court found it to be a contract acceptance, "[a] contract does not exist without a definite offer and a mirror-image acceptance." *Volker Court, LLC v. Santa Fe Apartments, LLC*, 130 S.W.3d 607, 611 (Mo. App. W.D. 2004) (internal quotations omitted). "As a general common law principle, for a contract acceptance to be effective it must be positive and unambiguous." *Katz v. Anheuser-Busch, Inc.*, 347 S.W.3d 533, 545 (Mo. App. E.D. 2011) (internal

---

[3] This letter comports with the testimony at trial that Loomer indeed discussed the settlement offer with his clients and with the attorney for Great American, James Kreamer.

quotations omitted). Defendants' letter of August 24th was a rejection of the offer and a proposed counter-offer. Furthermore, Loomer indicated he would circulate releases for review by all Defendants and Hasty.

Clearly, then, the trial court's legal conclusion that the offer was accepted on August 24, 2012, was a misapplication of the law.[4] Hasty testified that his August 22nd letter "was my understanding of my authority from Mr. Smith." The other evidence relied upon by the trial court and the majority opinion was an email from Loomer dated August 27, 2012:

> Paul,
> Per our telephone discussion this morning and the email I sent to you last week, we have a settlement. We will get you *the proposed settlement documents for you and Scott to review.*

(Emphasis added.) The August 27, 2012 e-mail stated that, per a phone call, the parties had a settlement; however, the e-mail references a "proposed settlement document" for review. The additional terms suggested by Defendants were not addressed in the email. The court must look to the intention of parties as expressed or manifested in their words or acts. *Arndt v. Beardsley*, 102 S.W.3d 572, 575 (Mo. App. S.D. 2003). Loomer testified:

> [Co-counsel for Defendants Herkert and Stolar Parnership, LLP]: And that was the e-mail in which -- or the telephone discussion that you had with regard to transmittal and circulation of the settlement documents?
>
> [Loomer]: Right. In my letter I added -- the original letter that's Exhibit No. 1 I had added that each pay their own attorney fees, costs. That was not part of Paul's original letter so I wanted to make sure that there was no issue with regard to, you know, some counteroffer.
> So, we communicated, we talked about it that morning. He said his clients were on board[.] . . . So I sent out the settlement documents for him and Scott Kreamer on behalf of America to review.

---

[4] However, as noted by the majority opinion, the Smiths, by attorney Hasty, did not challenge that Hasty reached an agreement to settle the dispute.

5

Loomer testified that he was told that Hasty's clients were "on board," however, Hasty and each of the Smiths testified there had been no verbal communication between either of the Smiths and Hasty about the additional settlement agreement terms after the discussion of Defendants' first offer and the Smiths' counter-offer. Although Hasty testified he sent a "blind carbon copy" of all the letters that were exchanged to the address he had in Kansas for the Smiths,[5] there is nothing in the letters that would alert the Smiths that Hasty had resolved the issues of costs, attorney's fees, and confidentiality. Furthermore, as noted in the correspondence from Loomer, the future settlement agreement was called a "proposed" settlement agreement.

To determine whether attorney's fees and costs were a significant factor in the settlement negotiations, it is important to note that the Smiths, prior to the foreclosure, vehemently protested the foreclosure sale, advising by letter that they were the rightful owners and that there would be significant damages. After the foreclosure sale, Hasty sent a letter to Defendants stating:

> You are each hereby notified that claim is made against you. The actions you have taken, together, constitute a conspiracy resulting in conversion, trespass, invasion of privacy, defamation, libel, and probably other torts.
> Demand is hereby made that you immediately provide written confirmation that the proceeds of the Trustee's Sale, in their entirety, are being paid to Carl and Margarita Smith and counsel. This office does have an attorneys' lien on this claim.

The Smiths, through attorney Hasty, indicated that they believed they had been the victims of several torts. Presumably, Hasty had a good faith basis to bring suit on each of these claims. Again, even if the court disregarded the testimony of the Smiths

---

[5] Mr. Smith testified he was in Branson and did not receive the correspondence until his return to Kansas; however, even if we accept the inference that he did receive the correspondence, there is nothing in the correspondence that indicates that the terms of costs, attorney's fees, and confidentiality had been addressed.

6

that attorney's fees were an important term of the settlement, attorney's fees were apparently important to Hasty.

Hasty obtained both of the parties' signatures on his "contingent contract." He sent notice of his contingency contract during preliminary negotiations with Loomer. After the Smiths notified Hasty that they did not accept the terms of the settlement agreement, Hasty again, by letter to Defendants, claimed to have a "contingent fee agreement" and claiming a lien on any recovery by Mr. and Mrs. Smith "[t]hat includes recovery of the property." Hasty testified that he received a call from a "public adjuster" that had signed a contract with either Mr. Smith or Mrs. Smith or both of them. He did not know which but the adjuster was looking for a lawyer; he talked with Mr. Smith by phone and drafted the letter given by Mr. Smith to Mr. Herkert prior to the foreclosure. He then met Mrs. Smith at the hotel where she worked when she signed the attorney's contract but never discussed the case with her. He had both parties sign the contract even though he did not meet Mr. Smith at all until the date that was scheduled for the Motion to Enforce the Settlement hearing. The representation contract was not admitted into evidence at trial.

The parties continued to negotiate regarding other terms in the proposed settlement agreement. In fact, in one letter, dated August 30, 2012, Hasty, after stating concerns about the way the document was drawn, stated, "However, all that being said, if Liberty Bank is willing to execute the document, *I believe Mr. and Mrs. Smith will agree.*" (Emphasis added.)

An analysis of the responses from Hasty to the "proposed" settlement agreement indicates several complaints about the proposed agreement. Most important, however, in

7

the response of August 30, 2012, is the statement, "I believe Mr. and Mrs. Smith will agree." As of August 30, 2012, it had to be clear to Defendants that there was no apparent authority and that there was no settlement because the Smiths were not yet agreeing to it. Hasty was clear in his letter that he recognized that it was the Smiths who needed to agree to the settlement.[6]

If you disregard the testimony by the Smiths that they never authorized a settlement based upon the terms that each party would pay its own attorney's fees and costs and that the settlement would be confidential and if you disregard the testimony of Hasty that he never discussed anything with the clients other than the offer that was made on August 22nd, there must be some other evidence to base the decision that Hasty had actual or apparent authority to settle the case in the manner of the proposed settlement. The written correspondence shows none. In fact, all of the evidence is to the contrary. Throughout the correspondence, the settlement is referred to as a "proposed settlement." Even after the letter from Loomer indicating there was a settlement, there is correspondence from Hasty stating he "believed" his clients would agree.

The only evidence the trial court could have relied on to draw the conclusion that the Smiths had agreed to the settlement is the testimony of Hasty AFTER he was notified by the Smiths that they did not agree to the settlement when they received the actual settlement documents. The statement as recited by Loomer is, "Well, my clients have backed out on the settlement. Will no longer settle the case upon the terms that we agreed. And I said, you know, Paul, we've got a settlement, and he said, I know it but they're just -- they won't sign the documents that we agreed upon." Hasty's September

---

[6] Negotiations or preliminary steps towards the formation of a contract do not satisfy the requisite element of mutuality of agreement. *Ketcherside v. McLane*, 118 S.W.3d 631, 635 (Mo. App. S.D. 2003).

8

18, 2012 letter to Loomer confirms Loomer's testimony. Neither party asked Hasty any specific questions about when the Smiths had agreed to pay their own attorney's fees and costs. Further, there were no questions on behalf of Mrs. Smith's interest in the property separate from her husband's. The only testimony is to the contrary: the Smiths and Hasty had not spoken after the August 22nd letter was sent to Loomer. There was no discussion of attorney's fees and costs.[7]

Nevertheless, the Smiths lose in this appeal because of the actions of their attorney and the "presumed authority" of their attorney to settle the case. By his ambiguous letter to Loomer after the Smiths declined to sign the agreement, Hasty made possible the only inference by the trial court that perhaps the Smiths at some point had actually agreed on the issues of attorney's fees and costs. It is clear from the correspondence that there was no apparent authority. The situation is more complicated by the fact that Hasty then continued to represent the Smiths though he had stated positions contrary to the Smiths' position. He continued to assert throughout the hearing that he thought he had authority to settle the case.[8]

Hasty continued to represent the Smiths through the first scheduled hearing and made further representations in writing against the Smiths' interests. At the hearing he testified that his clients' contention that Mrs. Smith did not agree to the settlement was

---

[7] *See* Rule 4-1.7(a)(1), Conflict of Interest ("[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client[.]").

[8] "Because an agent cannot create his own authority, apparent authority must arise from the acts of the principal, not from acts of the agent." *Parks v. MBNA America Bank*, 204 S.W.3d 305, 313 (Mo. App. W.D. 2006). It is the conduct of the principal (the client) which must cause a third person reasonably to believe that another (the attorney) has the authority to act for the principal. *Id.* "Apparent authority exists only concerning third parties that believe and have reason to believe that the authority exists." *Id.* "Apparent authority may be shown by evidence of the facts and circumstances attending the actions of the parties." *Id.* (internal quotations omitted).

the first time he even considered the issue of Mrs. Smith's opinion. As noted, separate counsel representing both Smiths participated at the hearing; however, Hasty then represented both Smiths in this appeal, where the issue of whether there was even a valid settlement was not raised and the deficiencies in the brief are noted in the majority and concurring opinions, which resulted in an impediment to a full resolution of all possible issues.

I return to Rule 4-1.2(a), which states the lawyer shall abide by a client's decisions concerning the objectives of representation and shall consult with the client as to the means by which they are to be pursued. It is only because of the deference to the trial court that an inference from the clients' lawyer after the fact can be substantial evidence. Reluctantly, I must concur in the result.

Nancy Steffen Rahmeyer, P.J. – Concurring in Result Opinion Author



# Missouri Court of Appeals

## Southern District

### Division One

CARL E. SMITH and MARGARITA SMITH,    )
       )
         Appellants,      )
       )
     vs.          )     No. SD32604
       )
GREAT AMERICAN ASSURANCE     )     Filed: June 3, 2014
COMPANY, GREGORY HERKERT,    )
and THE STOLAR PARTNERSHIP, LLP,   )
       )
         Respondents.     )

### CONCURRING OPINION

I concur in the principal opinion, but write separately in order to express my frustration with Appellants' lack of compliance with the briefing requirements in Rule 84.04,[1] and particularly with the lack of compliance with Rule 84.04(d), which sets forth the briefing requirements for points relied on. As this writer struggled to understand the points presented, it was necessary to utilize basic English principles that most learn in grammar school. Using those principles, Appellants' Point I was broken down to its most basic form. This was the result achieved:

---

[1] All rule references are to Missouri Court Rules (2013).

1

I did not have actual or apparent authority to negotiate a settlement of the claim on behalf my clients because I did not have the authority in that my clients did not authorize me to negotiate the settlement and my clients did not agree to the "purported" settlement.

Further comment as to the absurdity of Appellants' position is unnecessary. I would dismiss the entire appeal for lack of compliance with Rule 84.04(d) and failure of Appellants to comply with it in any of their points.

WILLIAM W. FRANCIS, JR., C.J. - CONCURRING OPINION AUTHOR

2