Shaun P. KENNEY and Christen D. Shepherd and Carol Pence and Mark D. Pence, Respondents,

v.

John M. VANSITTERT, Appellant.

No. WD 69073.

Missouri Court of Appeals, Western District.

Dec. 2, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 27, 2009.

Application for Transfer Denied March 31, 2009.

David R. Smith, Kansas City, MO, for Appellant.

Sylvester James, Jr., and Scott A. Shachtman, Kansas City, MO, for Respondents.

Before: THOMAS H. NEWTON, C.J., VICTOR C. HOWARD, and ALOK AHUJA, JJ.

THOMAS H. NEWTON, Chief Judge.

Mr. John Vansittert appeals from an order requiring him to execute a settlement agreement releasing his counterclaims against Respondents and ordering all attorneys of record to sign a stipulation of dismissal. Mr. Vansittert also challenges the summary judgment for Respondents on his counterclaim of malicious prosecution. We hold that the trial court did not err in finding the parties' settlement agreement included the release of Mr. Vansittert's counterclaims, and the counterclaims should have been dismissed. That decision renders Mr. Vansittert's summary judgment argument moot. Therefore, we affirm the trial court's order for the parties to execute a Mutual Release, vacate the court's order to Mr. Vansittert to execute a stipulation of dismissal, and enter an order dismissing his counterclaims.

## Factual and Procedural Background

This appeal emerges from an underlying lawsuit over a street fight between Mr. Vansittert and Respondents Mark and Carol Pence, Shaun Kenney, and Christen Shepherd. Mr. Vansittert urges one version of the fight; Respondents put forth another. Both sides offer witnesses supporting their stories. Respondents sued Mr. Vansittert in Jackson County Circuit Court for their injuries under a number of legal theories; Mr. Vansittert counterclaimed for his injuries and for malicious prosecution after he was arrested on assault charges and the grand jury would not indict. The trial court granted partial summary judgment, denying Mr. Vansittert's counterclaims for trespass to chattels and malicious prosecution and leaving his counterclaims for battery, negligence, and punitive damages remaining.

The parties entered into settlement discussions. In October, the parties negotiated Mr. Vansittert giving up a $20,000 demand for his counterclaims in exchange for language from Respondents admitting culpability. Subsequently, a document titled "General Release" was prepared by Mr. Vansittert's counsel of record, Mr. Ben Schmitt, and sent to Respondents' counsel. The relevant text is as follows:

FOR THE SOLE CONSIDERATION of Fifteen Thousand and 00/100 Dollars ($15,000.00) . . . the undersigned hereby releases and forever discharges John M. Vansittert . . . from any and all claims. . . . Moreover, plaintiffs and defendant agree (1) plaintiffs were drinking . . . (2) Dan Pence . . . did instigate the events . . . (3) John Vansittert did not throw Carol Pence to the ground[.]

As additional consideration, the releasor agrees to dismiss with prejudice the aforesaid lawsuit now pending. . . .

The General Release had signature blocks for each Respondent. There was no signature block for Mr. Vansittert. Between November 10, 2006, and December 6, 2006, each Respondent signed and notarized the General Release. Respondents did not send their executed release to Mr. Schmitt's office. However, the executed copy came into Mr. Vansittert's possession.[1]

Meanwhile, on December 1, 2006, Respondents' attorney, Mr. Scott Shachtman, emailed Mr. Schmitt's office asking when to expect the settlement checks. On December 11, 2006, Mr. Shachtman emailed again, asking if Mr. Vansittert had signed the settlement papers and requesting the settlement proceeds. On December 12, 2006, two checks from Mr. Vansittert's insurer totaling $15,000 were sent to Re-

---

1. The record does not make clear how this transfer of the document transpired.

spondents; these checks were subsequently cashed.

On December 28, 2006, Mr. Shachtman emailed Mr. Schmitt's office again stating, "We still need the final settlement papers with ... dismissal of all counterclaims asserted by Vansittert." On January 8, 2007, Mr. Schmitt replied and requested that Mr. Shachtman provide the specific language for Mr. Vansittert's release. On the same day, Mr. Shachtman emailed Mr. Schmitt with two paragraphs to add to the prior text that stated that Mr. Vansittert released his counterclaims. Mr. Vansittert, however, refused to sign.

Both parties filed motions to enforce their versions of a settlement. Respondents contended that all claims and counterclaims were orally settled by the attorneys. A document titled "Mutual Release" that incorporated the counterclaim release language drafted by Mr. Shachtman was attached to their motion. Respondents contended this Mutual Release was the written embodiment of the parties' final agreement. Mr. Vansittert contended the General Release reflected the terms of the agreement and that he had never agreed to release his counterclaims.

The trial court held an evidentiary hearing. Mr. Schmitt testified over objection that he had believed the entire case was resolved after the settlement payment, including Mr. Vansittert's counterclaims. He also testified it was not unusual for him to release settlement proceeds without a signed document if there was a relationship of mutual trust with another attorney. Mr. Vansittert's counsel objected to Mr. Schmitt's testimony as mental impressions protected by attorney work-product privilege. Mr. Vansittert then testified that he had never agreed to settle his counterclaims.

The trial court found the parties "through their respective attorneys of rec-

ord, mutually agreed to voluntarily dismiss all pending claims and counterclaims" and entered the following orders:

> Plaintiff's Motion to Enforce is GRANTED and defendant's Motion to Enforce is Denied.
>
> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that all parties execute the aforementioned Mutual Release....
>
> IT IS ALSO ORDERED that all attorneys of record shall execute and file the Mutual Stipulation for Dismissal with Prejudice....

Respondents subsequently complied with the trial court's order, filing an executed Mutual Release and an executed Stipulation for Dismissal with Prejudice in the circuit court. Mr. Vansittert appeals.

## Legal Analysis

Mr. Vansittert offers five points on appeal. He contends that the trial court should not have allowed Mr. Schmitt's testimony because of attorney work-product privilege and the parol evidence rule, that the evidence did not support that he agreed to release his counterclaims, and that the trial court erred in ordering him to sign the Mutual Release and in ordering the attorneys of record to sign a stipulation of dismissal. Mr. Vansittert also argues that summary judgment on the malicious prosecution counterclaim was improper because there were disputed issues of material fact.

### Admissibility of Extrinsic Evidence

First, Mr. Vansittert asserts that the trial court abused its discretion because the work product rule barred Mr. Schmitt from testifying about the terms of the settlement, and the parol evidence rule barred evidence beyond the four corners of the General Release. "A trial court has

broad discretion to admit or exclude evidence at trial." *State v. Madorie*, 156 S.W.3d 351, 355 (Mo. banc 2005). We reverse only where the court has abused its discretion. *Id.*

### The Work Product Rule

 The work product doctrine in Missouri protects two types of information from discovery: both tangible and intangible. *Ratcliff v. Sprint Mo., Inc.*, 261 S.W.3d 534, 547 (Mo.App. W.D.2008). Tangible work product consists of documents and materials prepared for trial and is given a qualified protection under Rule 56.01(b)(3) [2]; its production may be required on a showing of substantial need. *State ex rel. Ford Motor Co. v. Westbrooke*, 151 S.W.3d 364, 367–68 (Mo. banc 2004). Intangible work product consists of the mental impressions, conclusions, opinions, and legal theories of an attorney. *Ratcliff*, 261 S.W.3d at 547. Intangible work product has absolute protection from discovery. *Bd. of Registration for Healing Arts v. Spinden*, 798 S.W.2d 472, 476 (Mo.App. W.D.1990). The doctrine limits discovery in order to prevent a party in litigation "from reaping the benefits of his opponent's labors" and to guard against disclosure of the attorney's investigative process and pretrial strategy. *Westbrooke*, 151 S.W.3d at 366 n. 3; *State ex rel. Atchison, Topeka & Santa Fe Ry. Co. v. O'Malley*, 898 S.W.2d 550, 553 (Mo. banc 1995).

 The work product rule, however, is a limitation on pretrial discovery, not an evidentiary privilege. *Callahan v. Cardi-*

*nal Glennon Hosp.*, 863 S.W.2d 852, 868 n. 5 (Mo. banc 1993). The doctrine's pretrial limitation was discussed extensively in *Halford v. Yandell*, 558 S.W.2d 400, 405–06 (Mo.App.1977). The Missouri Supreme Court, relying on *Halford*, stated that work product protections end at trial: "Work product is solely a defense to discovery. At trial, information previously protected by the work product doctrine becomes admissible if it is relevant." *Callahan*, 863 S.W.2d at 868 n. 5. Even assuming that Mr. Schmitt's interpretation of conversations in which he was a participant constituted work product, we find that the doctrine did not bar Mr. Schmitt from testifying about his understanding of the settlement.[3]

### The Parol Evidence Rule

 Mr. Vansittert further argues that Mr. Schmitt's testimony was barred by the parol evidence rule. A settlement release is governed by the law of contracts. *City of Kansas City v. Sw. Tracor Inc.*, 71 S.W.3d 211, 215 (Mo.App. W.D. 2002). The parol evidence rule is a substantive rule of contract law and exists to preserve the sanctity of written contracts. *Mid Rivers Mall, L.L.C. v. McManmon*, 37 S.W.3d 253, 255 (Mo.App. E.D.2000). If a written contract appears within its four corners to be complete, then the parol evidence rule operates to exclude evidence contradicting the instrument. *Id.* at 256. Correspondingly, if the writing is not final and complete, parol evidence is admissible. *Don King Equip. Co. v. Double D. Tractor Parts, Inc.*, 115 S.W.3d 363, 372–73 (Mo.

---

**2.** All rule references are to Missouri Rules of Civil Procedure (2008).

**3.** We emphasize that it will be the rare case in which a litigant's attorney may be called to testify, and rarer still that the attorney's mental impressions would constitute admissible evidence. *See United States v. Nobles*, 422

U.S. 225, 245–46 n. 4, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (White, J., concurring) ("A lawyer's mental impressions are almost never evidence...."). Here, the only objection to Mr. Schmitt's testimony that was both preserved and raised on appeal was grounded in the work product doctrine.

App. S.D.2003). "The essence of the parol evidence rule is, therefore, that evidence outside a completely integrated contract cannot be used to change the agreement." *State ex rel. Mo. Highway & Transp. Comm'n v. Maryville Land P'ship*, 62 S.W.3d 485, 489 (Mo.App. E.D.2001).

Whether a writing is a completely integrated contract must be determined before the parol evidence rule precludes the introduction of evidence. *Don King Equipment Co.*, 115 S.W.3d at 373. In Missouri, to determine if a writing is integrated, we look to the face of the document itself—without looking to the surrounding facts and circumstances. *Maryville Land*, 62 S.W.3d at 489–90. Here, looking at the four corners of the General Release, we cannot conclude that it was integrated. A complete release agreement requires the same basic elements as any legally enforceable contract: an objective manifestation of assent as expressed through offer and acceptance, and consideration. *See Tirmenstein v. Cent. States Basement & Found. Repair, Inc.*, 148 S.W.3d 849, 851 (Mo.App. E.D.2004); *L.B. v. State Comm. of Psychologists*, 912 S.W.2d 611, 617 (Mo.App. W.D.1995). Mr. Vansittert did not sign the General Release or otherwise indicate agreement within the document. As a result, there is no objective indication of mutual assent within the document's four corners. We cannot conclude solely from the document that the General Release is the final and complete expression of the parties' agreement. Thus, evidence extrinsic to the General Release was not precluded by the parol evidence rule.

### Evidence of a Mutual Release

Mr. Vansittert next contends the trial court erred in finding the parties agreed to voluntarily release their claims and consequently granting Respondents' Motion to Enforce Settlement. Our review of the trial court's judgment is under *Murphy v. Carron:* we sustain the judgment of the trial court unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *B–Mall Co. v. Williamson*, 977 S.W.2d 74, 77 (Mo.App. W.D.1998). Under Rule 84.13(d) and the standards set forth in *Murphy v. Carron*, on this issue we sustain the trial court's judgment unless there is no substantial evidence to support it. 536 S.W.2d 30, 32 (Mo. banc 1976). We set aside the judgment as against the weight of the evidence only where we have a firm belief that it is wrong. *Id.* We view the evidence in the light most favorable to the trial court's judgment and disregard all contrary inferences and evidence. *Parks v. MBNA Am. Bank*, 204 S.W.3d 305, 310 (Mo.App. W.D. 2006).

A motion to enforce settlement adds a collateral action for specific performance of the agreement. *Eaton v. Mallinckrodt, Inc.*, 224 S.W.3d 596, 599 (Mo. banc 2007). The party seeking to enforce a settlement agreement has the burden to do so by clear, convincing, and satisfactory evidence. *Id.* Because specific performance is an equitable remedy, the trial court is afforded great discretion. *Bishop v. Heartland Chevrolet, Inc.*, 152 S.W.3d 893, 896 (Mo.App. W.D.2005). In the instant case we must determine, first, whether there was a sufficient showing that Mr. Schmitt had the authority to bind Mr. Vansittert to a settlement of his counterclaims, and, second, whether the record supports the trial court's finding that Mr. Schmitt did so.

In Missouri, a party contending that his attorney lacked authority to bind him carries a heavy burden. *Bishop*, 152 S.W.3d at 896 n. 4. An attorney has no implied authority to settle claims on a

client's behalf. *McDowell v. Kearns,* 758 S.W.2d 481, 482–83 (Mo.App. W.D.1988). However, authority is presumed to be present in the client's attorney of record and where the attorney undertakes negotiations with the opposing party. *See id.* at 483. Here, Mr. Schmitt was Mr. Vansittert's only attorney of record in the case, Mr. Schmitt filed Mr. Vansittert's counterclaims, and Mr. Schmitt negotiated with Respondents' counsel to resolve Mr. Vansittert's counterclaims. Thus, Mr. Schmitt had *prima facie* authority to settle the claims; Mr. Vansittert consequently bore a heavy burden to rebut this presumption.

Our courts have only permitted parties to avoid settlements concluded by their attorneys where the evidence has failed to raise this presumption of authority, or where the fact-finder is truly convinced authority is lacking. *Bolander v. City of Green City,* 35 S.W.3d 432, 440 (Mo.App. W.D.2000). Although Mr. Vansittert testified that another attorney was later going to "take over on the counterclaims," his testimony about Mr. Schmitt's role and his own knowledge of the negotiations was contradictory and inconclusive. The trial court is free to believe or disbelieve a client's testimony about an attorney's authority. *Landmark Bank v. First Nat'l Bank in Madison,* 738 S.W.2d 922, 924 (Mo.App. E.D.1987). The trial court's order shows it was not convinced authority was lacking in Mr. Vansittert's attorney of record. Mr. Vansittert failed to rebut the presumption of Mr. Schmitt's authority to settle his counterclaims; we see no basis to disturb the trial court's findings.

Finally, where such apparent authority is present, " '[t]he compromise of a pending suit will be binding upon his client, unless it be so unfair as to put the other party upon inquiry as to the authority, or imply fraud.' " *Stearns Bank N.A. v. Palmer,* 182 S.W.3d 624, 626 (Mo.App.

E.D.2005) (quoting *Promotional Consultants, Inc. v. Logsdon,* 25 S.W.3d 501, 505 (Mo.App. E.D.2000)). In *Stearns* for example, after the parties' attorneys agreed to voluntarily dismiss claims, Mr. Palmer contended that he did not consent and, consequently, wanted to proceed with his claims. *Id.* at 625. The *Stearns* court held that "[o]nly allegations of unfairness in the agreement to dismiss or fraud in its procurement would undermine the attorney's apparent authority to enter the joint dismissal and relieve Palmer of the obligations thereunder." *Id.* at 626. Consequently, Mr. Palmer had "wholly failed to demonstrate any reason why the joint dismissal should be invalidated." *Id.* at 627. Similarly, Mr. Vansittert has not alleged unfairness or fraud that would require invalidating the agreement. We, therefore, conclude that Mr. Schmitt had a presumption of authority to settle Mr. Vansittert's counterclaim which Mr. Vansittert failed to rebut or invalidate.

Next, viewing the facts in the light most favorable to the judgment, we must ascertain whether the trial court's finding that the parties mutually agreed to dismiss all claims was against the weight of the evidence. The law encourages the peaceful settlement of disputes. *Sw. Tracor Inc.,* 71 S.W.3d at 215. As noted above, release agreements are governed by the law of contracts; an enforceable agreement requires mutuality of assent and consideration. *See Tirmenstein,* 148 S.W.3d at 851. Unless the subject matter is within the statute of frauds, a release agreement is not required to be in writing. *B–Mall,* 977 S.W.2d at 77. Oral settlements are valid provided there has been a meeting of the minds. *Bolander,* 35 S.W.3d at 440. Where there is conflicting evidence, we defer to the trial court's findings. *B–Mall,* 977 S.W.2d at 78.

■ We believe the record supports the trial court's finding that the parties, through their attorneys of record, agreed to a mutual release of claims. There is substantial evidence of both mutual assent and exchange of consideration. It is not disputed that Respondents agreed to release their claims in exchange for a settlement of $15,000. The record supports, correspondingly, that Mr. Vansittert agreed to release his remaining counterclaims in exchange for specific language in the release: Mr. Vansittert initially demanded money for his counterclaims but then, instead, requested language from Respondents admitting fault. This language was included in both the General Release and the Mutual Release. Evidence also supported assent to release of the counterclaims: Mr. Schmitt repeatedly testified that he believed the settlement included a release of counterclaims: "I believed that our case was resolved.... I believed the case to be settled." Consequently, we are not left with a firm belief that the trial court was wrong.

### Order to Sign the Mutual Release

■ Mr. Vansittert next argues that the trial court erred in ordering him to sign a Mutual Release because it did not embody the agreement. Again, we apply the *Murphy v. Carron* standard: we sustain the judgment of the trial court unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *B–Mall,* 977 S.W.2d at 77. Where a valid settlement agreement exists, a court may order the parties to execute a release as a species of specific performance. *Id.* at 79. Because the trial court did not err in finding a valid settlement agreement, it also did not err in ordering Mr. Vansittert to execute a release of his counterclaims.

■ However, Mr. Vansittert further contends that the Mutual Release goes beyond a release of his counterclaims and contains "many terms" that were never discussed or agreed to "and, certainly, are not part of the record." The Mutual Release largely mirrors the General Release Mr. Vansittert urged the trial court to enforce, but the Mutual Release contains the two paragraphs sent by Mr. Shachtman to Mr. Schmitt, stating that Mr. Vansittert agrees to dismiss his counterclaims with prejudice and releases Respondents from liability. This language is nearly identical to the language describing Respondents' release of claims in both the General and Mutual Releases. Other than his general objection to releasing Respondents, Mr. Vansittert fails to state which specific terms in the Mutual Release he is referring to in his argument; he also consequently fails to provide factual or legal basis for his contention that there was no agreement to these terms. We may not assume the role of advocate for a party "by attempting to develop an appellate argument the party has failed to set forth itself." *Rainey v. SSPS, Inc.,* 259 S.W.3d 603, 605 (Mo.App. W.D.2008). Because we cannot hypothesize which terms Mr. Vansittert objects to, we must reject this contention.

### Order to Attorneys to Stipulate to Dismissal

In his fourth point, Mr. Vansittert argues that the trial court's order to the attorneys to stipulate to a voluntary dismissal with prejudice was an erroneous application of the law. Mr. Vansittert asserts that "[a] thorough review of the law ... could not find a single written opinion that allowed a trial judge to order an attorney to sign a stipulation of dismissal." Respondents, contending the order was proper, cite only support establishing the propriety of a court order to the parties to

execute a release in order to perform an existing settlement agreement. *See B–Mall,* 977 S.W.2d at 77. In *B–Mall,* we affirmed a trial court's order to the parties to execute a mutual release. After ordering the release executed, however, the *B–Mall* trial court then properly dismissed all claims and counterclaims with prejudice; it did not order the parties to stipulate to a dismissal. *Id.*

The proper course for the trial court to follow after finding the parties had mutually agreed to release their claims was to dismiss those claims. A court order to a party to "voluntarily" dismiss claims miscasts an involuntary dismissal as voluntary. It also places the party in a double bind, having to choose between losing a right to appeal or acting in contempt of court. It is well settled that no appeal lies from a voluntary dismissal. *See e.g. Richman v. Coughlin,* 75 S.W.3d 334, 337 (Mo.App. W.D.2002). The right of appeal is statutory. *See Gaunter v. Shelton,* 860 S.W.2d 843, 844 (Mo.App. E.D.1993). Section 512.020 requires parties to be "aggrieved" by a judgment in order to appeal. If a party stipulates to a voluntary dismissal of their claims, they would not be "aggrieved" because the dismissal was with their consent. *Gaunter,* 860 S.W.2d at 844. Thus, if the party complies with the court's order, the party loses a right to appeal to test the underlying ruling. However, if the party does not comply, the party may be in contempt of the court's order.

Rule 84.14 authorizes us to give such judgment as we ought in order to dispose finally of the case. Because the trial court's order to Mr. Vansittert's attorneys to stipulate to dismissal was improper, we vacate this portion of the trial court's order and enter an order dismissing Mr. Vansittert's remaining counterclaims.

Mr. Vansittert's fifth and final point disputing summary judgment on his claim for malicious prosecution is moot.

VICTOR C. HOWARD and ALOK AHUJA, JJ., concur.