

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **39 BELL, LLC,** | ) | |
| | ) | |
| **Respondent,** | ) | **WD82281** |
| | ) | |
| **v.** | ) | **OPINION FILED:  October 8, 2019** |
| | ) | |
| **K&K, INC., ET AL.,** | ) | |
| | ) | |
| **Appellants.** | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable S. Margene Burnett, Judge

Before Division Three:  Gary D. Witt, Presiding Judge, Edward R. Ardini, Jr., Judge and
Thomas N. Chapman, Judge

Appellants K&K, Inc. ("K&K), M&L&J, Inc. ("M&L&J"), and Mia Jamison ("Jamison") (collectively "Appellants") appeal the Circuit Court of Jackson County's entry of an Amended Judgment finding that the parties had reached a binding settlement agreement and entering judgment pursuant to those terms.  On appeal, the Appellants raise two allegations of error.  First, they contend that the circuit court erred in finding the existence of a binding settlement agreement because there was no sworn testimony on the record, and thus there was no evidence upon which the court could find a settlement agreement had been reached.  Second, they contend that the finding that a binding

settlement agreement was entered into was against the weight of the evidence because it disregarded Jamison's statements to the court that she had not given authorization for her attorney to enter into the settlement agreement. We affirm.

**Factual Background**

K&K is owned in whole or in part by Jamison, and she is the President of the company. Jamison is the sole shareholder of M&L&J and is the President of the company. K&K owns real estate located at 1714-1726 W. 39th Street, Kansas City, Missouri ("Property"). First Commercial Properties L.L.C. ("First Commercial") contracted with K&K to purchase the Property for $1,250,000. First Commercial assigned the contract to purchase the Property to 39 Bell, LLC ("39 Bell"). The sale of the Property was never finalized, in part because the Appellants had leased portions of the Property to various tenants and refused to terminate those leases as required by the purchase agreement. After failing to complete the sale of the Property, 39 Bell brought a civil action against the Appellants for fraud, specific performance, and declaratory judgment on September 25, 2015. The Appellants initially failed to file an answer, and a Motion for Default Judgment was filed by 39 Bell on December 9, 2015. On February 12, 2016, the Appellants were granted leave to file an Answer out of time. The matter was originally set for trial on June 19, 2017, but was delayed multiple times until January 8, 2018. The day before trial on January 7, 2018, K&K filed for bankruptcy protection, which required the trial date to be continued again. The bankruptcy was dismissed on March 19, 2018, and the matter was set for trial on July 9, 2018.

2

On July 9, 2018, the parties appeared before the court and stated that they had reached a settlement agreement that morning ("July 9 Hearing"). The court asked the parties to place the settlement agreement on the record. Counsel for 39 Bell recited the essential terms of the agreement to the court including that: (1) the purchase contract would be specifically enforced with the purchase price being amended to $915,000; (2) the leases on the Property in favor of M&L&J and Sahara Sheesha would be terminated; (3) a contempt citation issued against Jamison in favor of an entity owned by 39 Bell in a related case would be released and marked in the court records as paid and satisfied and the parties would dismiss their respective claims pending in that case; and (4) the real estate transaction to transfer the Property would take place by November 9, 2018 ("Settlement"). Counsel for Appellants agreed that those were the essential terms of the Settlement agreement. Counsel for Appellants further informed the court that over the past several days during negotiations with opposing counsel that all of the specific terms of the settlement agreement had been agreed to by the parties with the exception of the final monetary amount to be paid for the real estate. He then informed the court that:

> As of yesterday, I asked Ms. Jamison for authority to settle based upon the terms and so the only thing left to discuss was the monetary amount. So this morning, as we were traveling to the courthouse, Ms. Jamison and I had a conversation about an evidentiary issue that was of some concern. And as a result of that, I asked if I could have authority to settle. She said okay, I will give you a million dollars authority. And I said do I have authority if they reject that to accept the 915 and she said yes. We hung up that conversation. I called [Counsel for 39 Bell]. I proposed the million dollar monetary portion of the settlement. [Counsel for 39 Bell] said he had to speak with the client. He communicated very quickly back that that had been rejected. And I said then we accept the 915. And that was when I believe that we had a settlement according to the outlines that have been given to you.

3

The court then stated that it believed there had been a binding settlement agreement entered

into by the parties.  Counsel for Appellants then stated:

> So Ms. Jamison -- after we had reached an agreement, Ms. Jamison communicated to me that she had difficulty with two parts of the agreement. Specifically, the portions that require the Sahara lease to be terminated and the M&L&J lease to be terminated.  And that's what she expressed to the Court this morning.

Ms. Jamison then had a very lengthy interaction with the court requesting a continuance

and stating that "there's big miscommunication" with herself and her attorney.

> The Court:  Well, Ms. Jamison, there's no continuance.  And I'm going to tell you, I have reason to have concerns over your statements that you make to me.  I have had numerous statements --
>
> Ms. Jamison:  I want to go to trial.
>
> The Court:  Well, you the opportunity to not have -- I mean, actually, you have a settlement right now.  At this point, the only trial you are going to end up having is the enforcement of this settlement.  You need to understand that you gave your attorney authority to settle the case.  And he settled -- they reached an agreement.
>
> Ms. Jamison:  I call him right back.  And I told him the liquor store and the Sahara was not in this deal because I cannot -- I cannot push these poor people --
>
> The Court:  Ms. Jamison, those two leases have been part of the issue with this case since it was filed three years ago.  The case has been set for trial on three separate occasions in this division.  The case has been settled today. And I am going to accept the settlement today.  And, with that, you are going to need to -- if you need to talk to an attorney about how to resolve these encumbrances, you need to.  But they have been in existence.  It's not a surprise. . . .

At a later point, Jamison also had the following exchange with the court:

> Ms. Jamison:  . . . .  That was the reason I didn't accept his offer.

The Court: You did accept his offer.

Ms. Jamison: No. Last time. I didn't accept --

The Court: We are talking about today. And you did.

Ms. Jamison: Yes, ma'am. But I really miss communicated [sic] with him.
. . .
     I say the lease -- I will give up half lease for M&L&J. And Sahara lease will maintain. So that -- that I cannot agree with it. And they just did it so fast. I was using an inhaler.

The Court: Ms. Jamison, a lot of people take inhalers. You gave your attorney authority to settle this case.

Ms. Jamison: Ma'am, I didn't --

The Court: Yes or no?

Ms. Jamison: No, ma'am. Yes -- yes --yes, for the contingent open saved up. Liquor store, half of the lease we talk about. And Sahara lease. Because I have no right to evict him without any (Indiscernible.) I need to go to the legal procedure.

Additionally, at points Jamison told the court that she didn't agree to settle and that "I miss communicated [sic]. I cannot dismiss it."

The court, on multiple occasions throughout the hearing, indicated that based on Jamison's behavior throughout the years of this litigation the court did not find her credible. The court further found that Jamison was only trying to further delay the case by alleging that no settlement agreement had been entered into. The court went as far as stating on the record, "And I don't believe you." when Jamison was trying to convince the court that the settlement agreement was not entered into. The court went into great detail on the record of the various efforts Jamison had taken to delay the proceedings and continuances Jamison had received throughout the pendency of the matter including the filing of a bankruptcy

5

the day before the case was set for trial. The trial court concluded, "I don't believe many of the statements you are telling me based on your conduct you've engaged in throughout this litigation."

Ultimately, the court found that the Settlement was binding and entered the proposed Judgment drafted by the parties following the conclusion of the July 9 Hearing.

On August 7, 2018, a new attorney entered his appearance for the Appellants and filed a Motion to Vacate or Reopen the Judgment. On August 8, 2018, an Amended Judgment was entered by the court and signed by counsel[1] for all parties approving it as to form. The Amended Judgment did not address the motion to vacate, and appears to have been entered merely to clarify the terms of the Settlement. The Appellants filed a Motion to Vacate or Reopen the Amended Judgment on September 5, 2018 ("Amended Motion"). The Amended Motion alleged that Jamison was surprised by the Judgment, she was not aware of the terms, nor did she give her authorization for any settlement agreement. The Amended Motion included an affidavit by Jamison attesting to the allegations.

On October 29, 2018, the court held a hearing regarding the Amended Motion ("October 29 Hearing"). At that hearing, new counsel for the Appellants argued that the terms of the Settlement and the Amended Judgment left the Appellants open to legal action from the existing tenants of the Property. Additionally, counsel reiterated the facts alleged in the Amended Motion--that the Appellants and specifically Jamison were surprised by

---

[1] The Amended Judgment was signed by the prior counsel for the Appellants. A new attorney for the Appellants entered an appearance on August 7, 2018, the day before the Amended Judgment was entered. It does not appear that prior counsel was aware that his clients had retained new counsel. Further, it does not appear that new counsel was aware the Amended Judgment was being entered. Counsel's signature was not necessary for the validity of the Amended Judgment nor have any claims challenging the entry of the Amended Judgment been raised on appeal.

6

the terms of the Settlement and the Amended Judgment and had not given their consent to settle the case under these terms.

The court entered a Judgment *Nunc Pro Tunc* on October 30, 2018, which denied the Amended Motion. It also replaced paragraph 6 of the Amended Judgment to correct an error in the case number at issue in the satisfaction of the collateral contempt action. In all other respects, the Amended Judgment remained in full force and effect. This appeal followed.

## Discussion

The Appellants raise two issues on appeal. In their first point, they contend that the circuit court erred in entering the Amended Judgment because there was no sworn testimony to support a finding that there was a valid and binding settlement agreement, which formed the basis for the judgment.

We begin by addressing 39 Bell's allegation that this argument has been waived because it was not properly raised before the circuit court. "It is well recognized that a party should not be entitled on appeal to claim error on the part of the trial court when the party did not call attention to the error at trial and did not give the court the opportunity to rule on the question." *Brown v. Brown*, 423 S.W.3d 784, 787 (Mo. banc 2014); *Geier v. Sierra Bay Dev., LLC*, 528 S.W.3d 51, 55 (Mo. App. S.D. 2017). "This requirement is intended to eliminate error by allowing the trial court to rule intelligently and to avoid 'the delay, expense, and hardship of an appeal and retrial.'" *Brown*, 423 S.W.3d at 787-88.

7

Rule 78.07(b)[2] clearly states that "in cases tried without a jury or with an advisory jury, neither a motion for a new trial nor a motion to amend the judgment or opinion is necessary to preserve any matter for appellate review *if the matter was previously presented to the trial court*." (emphasis added). [3]

As 39 Bell notes, no objection was made to the admissibility of the statements of the attorneys at the original July 9 Hearing. Further, Jamison did not argue at that hearing that the attorneys or Jamison should have been sworn and under oath, nor was it raised by Jamison's new counsel in the Amended Motion or at the October 29 Hearing on the Amended Motion. While the Amended Motion raised the issue of surprise and claims that Appellants did not give their attorney the authority to settle or were aware of the terms of the Settlement, no objection was made to the form by which the Settlement was confirmed by the court and adopted into the Amended Judgment.[4] Thus such a claim may only be reviewed for plain error.

"Plain error review is granted sparingly and rarely applied in civil cases." *Messick v. Atchison, Topeka & Santa Fe Ry. Co.*, 924 S.W.2d 620, 621 (Mo. App. W.D. 1996) (internal citation omitted). This Court may only find plain error where a miscarriage of

---

[2] All rule references are to Missouri Supreme Court Rules (2018).

[3] *Brown* applied the prior version of Rule 78.07(b) which lacked the emphasized language. The Court found that an appellant could not use the lack of a need for a new trial motion "to excuse him from responsibility for failing to preserve his claim . . . . An issue must be presented to the trial court to be preserved for appeal." *Brown*, 423 S.W.3d at 788 n. 5.

[4] Jamison's statements to the court at the July 9 hearing were inconsistent. At times she claimed that she did not agree to the terms of the Settlement, while at other times she stated (consistent with the timing of the events that was relayed to the trial court by her attorney) that she did agree to the terms of the Settlement but she "called [her attorney] right back" and attempted to add additional restrictions and terms on the authority to settle. As her counsel relayed the events to the trial court, Jamison authorized him to enter into a settlement under these terms, he contacted opposing counsel and the Settlement was agreed to and "...after we had reached an agreement, Ms. Jamison communicated to me that she had difficulty with two parts of the agreement."

8

justice has occurred. *Id.* Such is not the case here. Under Missouri law, "express authority to settle is presumed where the [party's] 'attorney of record asserts such authority.'" *Eaton v. Mallinckrodt, Inc.*, 224 S.W.3d 596, 599 (Mo. banc 2007) (quoting *Leffler v. Bi-State Dev. Agency*, 612 S.W.2d 835, 837 (Mo. App. E.D. 1981)). "[A]uthority is presumed to be present in the client's attorney of record and where the attorney undertakes negotiations with the opposing party." *Kenney v. Vansittert*, 277 S.W.3d 713, 721 (Mo. App. W.D. 2008). "The presumption may be overcome by the party disputing the attorney's authority, although that party bears a substantial burden of proof." *Eaton*, 224 S.W.3d at 599. "Our courts have only permitted parties to avoid settlements concluded by their attorneys where the evidence has failed to raise this presumption of authority, or where the fact-finder is truly convinced authority is lacking." *Kenney*, 277 S.W.3d at 721.

At the July 9 Hearing, the court had before it unchallenged evidence that Appellants' attorney was the attorney of record and that he had engaged in negotiations with opposing counsel to settle the case. This was sufficient to establish the rebuttable presumption that the attorney had the authority to settle and acted pursuant to that authority. Whether he was sworn under oath is immaterial because the mere procedural facts of the case--that he was the attorney of record who entered into settlement discussions--was sufficient to create a valid presumption of the validity of the Settlement. Regardless of the entry of the Amended Judgment, there existed a settlement between the parties based on the authority to settle given by Jamison to her attorney.

The Appellants cite to no case law supporting the proposition that an attorney must be sworn under oath to recite the terms of a settlement into the record for a confession of

9

judgment to be valid. The cases cited by the Appellants regarding the need for sworn testimony from attorneys are readily distinguishable. For example, in *Estate of Bell*, 292 S.W.3d 920 (Mo. App. W.D. 2009) the personal representative of the estate entered into a compromised settlement, and a motion was filed "to review and determine whether a proposed compromise settlement of the discovery of assets proceeding should or should not be approved" and requesting an evidentiary hearing. *Id.* at 922. Thus, the issue before the court was a request to approve the settlement. The court had no such role here. The July 9 Hearing was merely to recite the terms of the Settlement into the record so that the Settlement could be entered as a judgment.

The Appellants point to the Missouri Supreme Court decision of *Eaton v. Mallinckrodt, Inc.*, 224 S.W.3d 596 (Mo. banc 2007) to suggest that a hearing with sworn testimony is necessary when considering a challenge to an attorney's authority to settle a lawsuit. We do not believe that the circuit court ran afoul of *Eaton* because it did hold such a hearing. While Jamison made various statements at the July 9 Hearing arguing that she had not given her attorney the authority to settle or that she had miscommunicated with him regarding the terms of the Settlement, the properly raised challenge came pursuant to the Amended Motion and was considered at the October 29 Hearing. At that hearing, it was the Appellants' burden to put forth evidence that their attorney did not have the actual authority to enter into a binding settlement. As noted above, the only evidence presented was the affidavit of Jamison, a party whose credibility was already seriously suspect in the eyes of the court. We defer to the trial court as to issues of fact and the credibility of witness testimony. *Douglass v. Douglass*, 570 S.W.3d 130, 134 (Mo. App. W.D. 2019).

Appellants cite to no case, statute, or other legal authority, and we can find none in our own research to support the Appellants' contention that the attorneys needed to be sworn under oath before reciting the terms of the Settlement to the court prior to its entry of judgment pursuant to the terms of the Settlement. There is a presumption that Appellants' attorney had the authority to settle, and as the parties disputing that authority, the Appellants bore the burden of producing substantial evidence that such authority did not exist. The circuit court conducted an evidentiary hearing on the issue of counsel's authority on October 29, but the Appellants failed to satisfy their burden.

The circuit court did not err in finding that the Settlement was reached and entering the Amended Judgment pursuant to its terms.

## II.

The Appellants second point on appeal alleges that the circuit court erred in entering the Amended Judgment because it was against the weight of the evidence that their attorney had the authority to enter into the Settlement. In a challenge to the weight of the evidence, we view the circuit court's findings in the light most favorable to the judgment. *Kenney*, 277 S.W.3d at 720. Settlements are governed by the law of contracts and are valid if the essential terms of a contract have been met: (1) offer, (2) acceptance, and (3) consideration. *Id.* So long as there is a meeting of the minds and the subject matter is not governed by the statute of frauds, oral settlement agreements are enforceable. *Bolander v. City of Green City*, 35 S.W.3d 432, 440 (Mo. App. W.D. 2000); *Kenney*, 277 S.W.3d at 721.

The Appellants challenge the validity of the Settlement by arguing that their attorney lacked the actual authority to enter into the Settlement. As noted above, this

11

authority is presumed, and it is incumbent on the party challenging the authority to prove that the attorney did not, in fact, have the authority. The only evidence put forth by the Appellants at the October 29 Hearing was the sworn affidavit of Jamison stating that she and the other Appellants were (1) surprised by the entry of the judgment; (2) not aware of the terms of the Settlement prior to the judgment; and (3) did not authorize any settlement. Nothing required the trial court to find this affidavit credible or find this to be sufficient to rise to the level of meeting "a substantial burden of proof." *Eaton*, 224 S.W.3d at 599.

Further, even were we to find that the Appellants adduced sufficient evidence to establish that the attorney did not have actual authority to enter into the settlement, "where such apparent authority is present, '[t]he compromise of a pending suit will be binding upon his client, unless [the settlement] be so unfair as to put the other party upon inquiry as to the authority, or imply fraud.'" *Kenney*, 277 S.W.3d at 721 (quoting *Stearns Bank N.A. v. Palmer*, 182 S.W.3d 624, 626 (Mo. App. E.D. 2005)). Appellants raise no allegations that the Settlement was so unfair as to call into question the authority of counsel to enter into it on his clients behalf or imply fraud. Thus, regardless the procedural actions of the trial court, 39 Bell has the right to enforce the Settlement reached by the parties. Even were we to find error in the imposition of the Amended Judgment, which we do not, the Appellants would still be bound by its terms under the Settlement.

12

## Conclusion

For the reasons stated above, we find that the circuit court did not err in approving the Settlement and entering its Amended Judgment.

_____
Gary D. Witt, Judge

All concur