

# In the Missouri Court of Appeals
## Eastern District

### DIVISION THREE

STL RIVERVIEW PLAZA LLC,      )      No. ED111671

     )

        Appellant,      )      Appeal from the Circuit Court

     )      of the City of St. Louis

v.      )

     )      Honorable Joan L. Moriarty

METROPOLITAN ST. LOUIS SEWER      )

DISTRICT,      )

     )

        Respondent.      )      Filed: December 19, 2023

In this action for breach of contract and declaratory judgment, Plaintiff STL Riverview Plaza LLC ("STL Riverview") appeals the circuit court's judgment granting summary judgment in favor of the defendant, Metropolitan St. Louis Sewer District ("MSD"). We affirm.[1]

### *Factual and Procedural Background*

This dispute arises out of two easements granted by STL Riverview in favor of MSD for temporary construction easement rights on property owned by STL Riverview. MSD acquired the easements in conjunction with its Maline Creek Local Storage Facility Project ("Project").[2]

---

[1] We deny MSD's request to strike STL Riverview's statement of facts or, in the alternative, dismiss the appeal for failure to comply with Rule 84.04.

[2] According to MSD, the Maline Creek Local Storage Facility Project was a large MSD surface and underground construction project designed to store excess stormwater and sewage during extreme weather; to allow combined stormwater and sewer flow to overflow into the storage facility constructed below ground, to later be pumped through another tunnel to a treatment plant at MSD's Bissell pump station. The Maline Creek Local Storage Facility Project included construction of a large tunnel, located nearly 200 feet underground, from Chain of Rocks Drive to Church Road, in the city of St. Louis.

On August 7, 2015, Michael Scauzzo, managing member of STL Riverview signed a Temporary Construction Easement in favor of MSD ("2015 Easement"), granting MSD certain temporary construction easement rights on the property at 8907 Riverview that was owned by STL Riverview.[3] The property is a commercial plaza, consisting of multiple retail businesses in a "strip center" configuration. Mr. Scauzzo read the 2015 Easement prior to signing it. Pertinent here, the 2015 Easement states: "The temporary construction easement hereby granted shall become null and void upon the completion of the project." STL Riverview received a one-time payment of $80,000 from MSD for the 2015 Easement and deposited that payment into STL Riverview's bank account.

In 2017, MSD approached STL Riverview to seek an additional easement to obtain more room for parking. On July 7, 2017, Mr. Scauzzo signed a Temporary Construction Easement in favor of MSD, granting MSD additional temporary construction easement rights on the property at 8907 Riverview ("2017 Easement"). STL Riverview received a one-time payment of $27,777 from MSD for the 2017 Easement and deposited that payment into STL Riverview's bank account. Mr. Scauzzo read the 2017 Easement prior to signing it. Pertinent here, the 2017 Easement states: "The temporary construction easement hereby granted shall become null and void upon the completion of this project."

STL Riverview asserts that MSD verbally represented to STL Riverview during contract negotiations that the 2015 Easement would last no more than twenty-four months, and that the 2017 Easement would last no more than eighteen months. MSD denies any such representations were made in relation to either easement. The project apparently lasted beyond the time frames

---

[3] The Temporary Construction Easement granted MSD "the right of ingress and egress and exclusive right to remove trees, shrubs, and bushes, grade and fill as necessary to build sewer and/or channel improvements and perform all other related construction, including temporary relocated utilities" on the property.

alleged by STL Riverview, and STL Riverview seeks to hold MSD accountable for the breach of its alleged promises.

STL Riverview sued MSD in October 2020, alleging that any and all claims and rights of MSD under the 2015 Easement expired in February 2017, and that any and all claims and rights under the 2017 Easement expired in February 2019. In Count I of STL Riverview's amended petition, STL Riverview alleged that MSD breached its contracts with STL Riverview by continuing to occupy the property after the expiration of the easements, and by failing to compensate STL Riverview at the agreed-upon monthly amount after the expiration of the easements. In Count II, STL Riverview sought a judgment declaring the rights of the parties under the easements.

MSD answered, denying most of STL Riverview's allegations, and asserting a number of affirmative defenses. Among those defenses, MSD asserted that the terms of the alleged contract – the purported oral representations – violated Section 432.070 because MSD is a municipal corporation. MSD also asserted that the petition failed to state a claim for which relief may be granted in that the 2015 Easement and the 2017 Easement were not limited to twenty-four and eighteen months, respectively. It was MSD's position that the two easements did not expire because the contracts explicitly provided that the easements were to remain in place through the completion of the project. MSD also asserted that the allegations in STL Riverview's petition were barred by the parol evidence rule.

MSD moved for summary judgment pursuant to Section 432.070, which requires, among other things, that contracts with municipal corporations be in writing. MSD argued that even if STL Riverview could show an oral agreement that the 2015 Easement and the 2017 Easement

3

would not exceed twenty-four months and eighteen months, respectively, STL Riverview could not enforce a non-written modification to a contract against MSD, a municipal corporation.

In responding to MSD's motion for summary judgment, STL Riverview argued that MSD had made "express representations" that the 2015 Easement and the 2017 Easement would last twenty-four months and eighteen months, respectively, and that STL Riverview referred to "correspondence" from MSD purportedly acknowledging the same. STL Riverview submitted an affidavit by its managing member, wherein he attested to MSD's express representations. Regarding the 2015 Easement, STL Riverview also submitted an appraisal ordered by MSD regarding what impact, if any, the easements might have on the market value of STL Riverview's property. The appraisal identifies a diminution in value based on a period of two years. STL Riverview argued this showed that the references to "temporary" and "completion of project" in the 2015 Easement meant twenty-four months. Regarding the 2017 Easement, STL Riverview argued that an eighteen month limitation was specifically identified and acknowledged in an email correspondence from STL Riverview to MSD on the very day the easement was signed.

In granting summary judgment for MSD, the circuit court noted that none of the documents cited by STL Riverview represented writings signed or authored by MSD evidencing the alleged twenty-four and eighteen month time limits for the easements. Accordingly, due to STL Riverview's inability to establish any material facts supporting the finding of a written contract modification signed by MSD whereby MSD agreed that the Temporary Construction Agreements would not exceed twenty-four months and eighteen months, the Court found it must enforce Section 432.070 and grant MSD judgment as a matter of law. The circuit court therefore granted MSD's motion for summary judgment and entered judgment in favor of MSD and against STL Riverview on STL Riverview's amended petition. STL Riverview appeals.

4

## *Standard of Review*

This Court reviews the grant of summary judgment de novo. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 377-78; Rule 74.04(c)(6). A defending party moving for summary judgment, such as MSD here, may establish a right to judgment by showing: (1) facts that negate any one of the claimant's element facts; (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly pleaded affirmative defenses. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381.

Generally, in our review, we view the summary-judgment record in the light most favorable to the party against whom judgment was entered. *Id.* at 376. We take as true the facts set forth by affidavit or otherwise in support of a party's motion unless contradicted by the non-moving party's response to the summary-judgment motion. *Id.* We also accord the non-movant the benefit of all reasonable inferences from the record. *Id.* This being said, the material facts here are not in dispute. The sole issue in this case is whether MSD is entitled to judgment as a matter of law.

## *Discussion*

The dispute here centers around the date of expiration for two easements. Both written easement agreements state: "The temporary construction easement hereby granted shall become null and void upon the completion of this project." STL Riverview, however, alleges that MSD represented that the duration of the easements would be limited to a specific time period. With respect to the 2015 Easement, STL Riverview contends MSD represented the project would be

5

complete and the easement would therefore expire in twenty-four months. With respect to the 2017 Easement, STL Riverview contends MSD represented the project would be complete and the easement would therefore expire within eighteen months of execution of the easement.

In answering STL Riverview's petition, and then in moving for summary judgment, MSD characterized the alleged representations as an oral contract modification. The circuit court likewise treated the alleged oral representations as a contract modification and held the agreements void because they were not in writing. Treated as such, the circuit court was correct.

MSD is a municipal corporation and a political subdivision of the State of Missouri. Mo. Const. art. VI, sec. 30(b); *State ex rel. City of St. Louis v. Mummert*, 875 S.W.2d 108 (Mo. banc 1994). Missouri law is clear that contracts with municipal corporations are void unless they are: (1) in writing; and (2) signed by a leader who had been duly granted authority by the government board. Section 432.070. Under Section 432.070:

> No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing.

The foregoing requirements of Section 432.070 are mandatory, not discretionary. *Orf Const., Inc. v. Black Jack Fire Prot. Dist.*, 239 S.W.3d 685, 687 (Mo. App. E.D. 2007). A contract made with a municipality in violation of the requirements in Section 432.070 is void *ab initio*, not merely voidable. *Rail Switching Servs., Inc. v. Marquis-Missouri Terminal, LLC*, 533 S.W.3d 245, 262 (Mo. App. E.D. 2017). Any purported oral promise or agreement made by the municipality is void and unenforceable under Section 432.070. *Withers v. City of Lake St. Louis*, 318 S.W.3d 256, 265 (Mo. App. E.D. 2010). All persons dealing with a municipal corporation are charged with notice

6

of the law that all contracts with the municipal corporation must be in writing. *Gill Const., Inc. v. 18th & Vine Auth.*, 157 S.W.3d 699, 708 (Mo. App. W.D. 2004).

Here, the documents produced by STL Riverview as evidencing MSD's purported representations regarding the duration of the easement are, as the circuit court found, not written contracts; they are not signed by MSD, and they show no agreement by MSD that the two easements would not exceed the time frames alleged by STL Riverview. STL Riverview has not produced any written document signed by MSD whereby MSD agreed that the two easements would not exceed the twenty-four month and eighteen month time frames alleged by STL Riverview. Accordingly, any such alleged verbal promises or agreements regarding time limits for the easements are void and unenforceable. Section 432.070.

STL Riverview, however, contends that the representations were not an additional agreement or modification but rather constituted "expository information" as to the meaning of ambiguous terms in the easements. In opposing MSD's motion for summary judgment, STL Riverview argued that the easements are not complete, integrated contracts and therefore the parol evidence rule does not bar evidence of the alleged representations to decipher and confirm the meaning of the terms "temporary" and "completion of project" used in the easements, which STL Riverview characterizes as being ambiguous. However, even assuming the alleged representations were not additional, separate, distinct agreements, or contract modifications, STL Riverview's evidence regarding the alleged representations is still barred by the parol evidence rule because the written easement agreements are completely integrated, unambiguous agreements.

"In Missouri, we state the parol evidence rule in classical terms." *Jake C. Byers, Inc. v. J.B.C. Invs.*, 834 S.W.2d 806, 811 (Mo. App. E.D. 1992). "In the absence of fraud, accident, mistake, or duress, the parol evidence rule prohibits evidence of prior or contemporaneous oral

agreements which vary or contradict the terms of an unambiguous, final and complete writing." [4] *Id.* Stated similarly, "when parties have reduced their final and complete agreement to writing, the parol evidence rule does not permit the writing to be varied or contradicted. *Pecos I, LLC v. Meyer*, 655 S.W.3d 579, 588 (Mo. App. E.D. 2022).

"The primary purpose of the parol evidence rule is to preserve the sanctity of written contracts." *Mid Rivers Mall, L.L.C. v. McManmon*, 37 S.W.3d 253, 255 (Mo. App. E.D. 2000). "[A]pplication of the rule discharges prior and contemporaneous oral agreements because those agreements are considered to be merged into the written document." *Byers,* 834 S.W.2d. at 812. When the parties enter into an agreement and reduce it to writing, the instrument is presumed to represent the entire agreement unless the writing indicates otherwise and, absent fraud, accident or mistake, all prior negotiations and conversations merge into the written agreement signed by the parties where it appears that the written instrument is full and complete on its face. *Chase Elec. Co. v. Acme Battery Mfg. Co.*, 798 S.W.2d 204, 209 (Mo. App. E.D. 1990).

For the parol evidence rule to apply, there must be a completely integrated contract. *Don King Equip. Co. v. Double D Tractor Parts, Inc.*, 115 S.W.3d 363, 374 (Mo. App S.D. 2003)(parol evidence allowed where agreement not completely integrated). And the contract must be unambiguous. *City of Malden v. Dunklin Cnty. Reorganized Common Sewer Dist. #1*, 611 S.W.3d 615, 621 (Mo. App. S.D. 2020)(parol evidence allowed where agreement ambiguous). We begin by addressing the first threshold question – whether the two written easement agreements are completely integrated. *Byers,* 834 S.W.2d. at 812; *Singh v. Lucky's Travel Ctr., LLC*, 672 S.W.3d 76, 81 (Mo. App. S.D. 2023)(a court must first determine whether a contract is integrated before applying the parol evidence rule). "A written agreement is integrated if it represents a final

---

[4] STL Riverview does not allege any fraud, mistake, accident, or duress.

8

expression of one or more terms of the agreement." *Singh*, 672 S.W.3d at 81 (quoting *State ex rel. Missouri Highway & Transp. Comm'n v. Maryville Land P'ship*, 62 S.W.3d 485, 489 (Mo. App. E.D. 2001)). Contracts can be either completely or partially integrated. *Maryville Land P'ship*, 62 S.W.3d at 489. If the writing "omits a consistent additional term that is either agreed to for separate consideration or might naturally have been omitted in the circumstances, the agreement is considered only partially integrated and collateral facts and circumstances may be introduced to prove consistent additional terms." *Id.* "If a writing omits an essential term, it is considered incomplete and extrinsic evidence may be introduced to establish the parties' intent." *Bldg. Erection Servs. Co. v. Plastic Sales & Mfg. Co.*, 163 S.W.3d 472, 479 (Mo. App. W.D. 2005).

To determine whether a writing is integrated, the court looks to the face of the document itself without considering the surrounding facts and circumstances. *Maryville Land P'ship*, 62 S.W.3d at 489-90; *Singh*, 672 S.W.3d at 81*; Kenney v. Vansittert*, 277 S.W.3d 713, 720 (Mo. App. W.D. 2008); *Byers,* 834 S.W.2d. at 812. If the document appears to be a complete agreement on its face, "it is conclusively presumed to be the final and complete agreement between the parties." *Maryville Land P'ship*, 62 S.W.3d at 490; *Singh*, 672 S.W.3d at 81*; Byers,* 834 S.W.2d. at 812. If the written contract appears within its four corners to be a complete agreement, then the parol evidence rule operates to exclude evidence, including evidence of prior or contemporaneous oral agreements, that vary or contradict the instrument. *Mid Rivers Mall*, 37 S.W.3d at 255-56; *Byers,* 834 S.W.2d. at 812-13. Even consistent additional terms within the contract's scope are precluded. *Singh*, 672 S.W.3d at 81. "The essence of the parol evidence rule is, therefore, that evidence outside a completely integrated contract cannot be used to change the agreement." *Pecos*, 655 S.W.3d at 588 (internal quotation omitted).

9

Here, looking at the face of the two construction easements, we hold that the written easement agreements are completely integrated agreements. A contract requires an objective manifestation of assent as expressed through offer and acceptance, and consideration. *Kenney*, 277 S.W.3d at 720. The essential elements of a contract are: (1) competency of the parties to contract; (2) subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *Bldg. Erection Servs.*, 163 S.W.3d. at 477. At issue here is the fourth element, which requires the parties to have "a mutuality of assent or a meeting of the minds on the essential terms of a contract." *Id*. Particularly at issue is the parties' agreement as to the duration of the easements. The court can determine whether there has been a meeting of the minds by looking to the intention of the parties as expressed or manifested in their words or acts. *Id*. "The essential terms of the contract must be certain or capable of certain interpretation." *Id*. "That is, the terms of agreement must be "sufficiently definite" to enable the court to give it an exact meeting." *Id*. (internal quotation omitted).

Each written easement agreement defines the specific project. Each recites consideration and confirmation by STL Riverview of receipt of that consideration. Each specifically defines the rights granted to MSD by STL Riverview, and includes attachments depicting the exact size, scope, and location of the easement. The two written easement agreements do not omit an essential term; and no such assertion is made. *See Bldg. Erection Servs.*, 163 S.W.3d. at 477-79 (noting if a writing omits an essential term, it is considered incomplete and extrinsic evidence may be introduced to establish the parties' intent)(scope of contract as to number of skylights to be installed not included in contract, therefore contract not complete). The two written easement agreements are not silent on the issue of duration of the easement. Indeed, STL Riverview admits the written easement agreements contain a provision regarding the duration of the easements. The

10

agreements state: "The temporary construction easement hereby granted shall become null and void upon the completion of this project." The written easement agreements are signed by both parties, indicating mutual assent. *Kenney*, 277 S.W.3d at 720 (finding no mutual assent where no signature on document).

STL Riverview contends the written easement agreements are not integrated because neither easement contains an integration clause in which the parties state the writing is to be an expression of their compete agreement. STL Riverview cites *Don King*, a case in which the court found an agreement not integrated, and thus the parol evidence rule did not preclude consideration of a verbal agreement. *Don King Equip. Co. v. Double D Tractor Parts, Inc.*, 115 S.W.3d 363 (Mo. App S.D. 2003). However, the lack of an integration clause in that case was just one of several factors the court cited in finding the contract there to be not integrated. *Id*. at 373. An integration clause is not determinative. "The existence of an integration clause may be a strong indication the writing is intended to be complete, but its existence is not necessarily determinative." *Byers,* 834 S.W.2d. at 813 (internal citations omitted). "[T]he absence of an integration clause is likewise not determinative; the writing still may be complete on its face." *Byers,* 834 S.W.2d. at 813. And on the face here, the two written easement agreements are complete on their face and address the issue of duration.

We turn, then, to whether the two written easement agreements are ambiguous. Given our finding that the two written easement agreements are completely integrated, the parol evidence rule prohibits the court from considering extrinsic evidence contradicting the terms of the agreement – here, evidence of the purported representations – unless the terms of the agreement are themselves ambiguous.[5] The only way in which the court may consider evidence outside the

---

[5] Again, STL Riverview makes no allegations of fraud, accident, mistake, or duress, such that the parol evidence rule would not apply.

11

four corners of the document is if the terms of the contract are ambiguous. *Mid Rivers Mall*, 37 S.W.3d at 256.

Whether a contract is ambiguous is a question of law for the court. *Tribus, LLC v. Greater Metro, Inc.*, 589 S.W.3d 679, 702–03 (Mo. App. E.D. 2019). To determine whether a contract is ambiguous, this Court considers the whole document and, absent any definition within the contract, gives the words in the contract their natural and ordinary meaning. *Patterson v. Rough Rd. Rescue, Inc*., 529 S.W.3d 887, 894 (Mo. App. E.D. 2017).

A contract is ambiguous only if its terms are susceptible of more than one meaning such that reasonable persons may fairly and honestly differ in their construction of the terms. *Id.* A contract is not ambiguous merely because the parties disagree over its meaning. *Pelopidas, LLC v. Keller*, 633 S.W.3d 383, 395 (Mo. App. E.D. 2021). Rather, an ambiguity arises if the language is reasonably susceptible to two or more interpretations. *Patterson*, 529 S.W.3d at 894 (citing *Lacey v. State Bd. of Registration for the Healing Arts*, 131 S.W.3d 831, 839-41 (Mo. App. W.D. 2004)). An ambiguity exists if the contract promises something in one point and takes it away in another. *Patterson*, 529 S.W.3d at 894 (citing *Behr v. Blue Cross Hosp. Serv., Inc., of Missouri*, 715 S.W.2d 251, 256 (Mo. banc 1986)). An ambiguity arises where there is duplicity, indistinctness or uncertainty in the meaning of the words used in the contract. *Patterson*, 529 S.W.3d at 894. Ambiguities may be patent or latent. *Id*. "A patent ambiguity arises from the face of the document." *Tribus*, 589 S.W.3d at 702-3. "[A] latent ambiguity arises when the particular words of a document apply equally well to two different objects or some external circumstances makes their meaning uncertain." *Id.* (internal quotation omitted). A latent ambiguity arises where a contract "cannot be executed due to the ambiguity." *Patterson*, 529 S.W.3d at 894.

12

STL Riverview maintains that the terms "temporary" and "completion of the project" are ambiguous. STL Riverview does not explain how or why the terms are ambiguous, it just concludes that they are.

We find no patent or latent ambiguity. The two terms are not defined in the written easement agreement, thus we turn to their natural and ordinary meaning, as typically found in the dictionary. The term "temporary" is defined as lasting for only a limited period of time; not permanent.[6] The term "completion" is defined as the "state of being completed."[7] "Completed" is defined as "finished, ended, concluded" or "brought or having come to an end."[8] No argument is made, and we do not find that these terms are susceptible of more than one meaning such that reasonable persons may fairly and honestly differ in their construction of the terms. STL Riverview seemingly only disagrees as to the meaning of the terms. That is not an ambiguity. The terms are not reasonably susceptible to two or more interpretations. The easements and terms do not promise something in one point and take it away in another. The terms do not apply equally well to two different objects. There is no duplicity, indistinctness or uncertainty in the meaning of the words and the easement agreement can be executed using these terms. Terms of an agreement must be sufficiently definite to enable the court to give the terms an exact meaning. *Bldg. Erection Servs.*, 163 S.W.3d. at 477. And here, the terms are sufficiently definite. Either the project is complete, or it is not. Given the massive, complicated construction project, including the construction of a large tunnel nearly 200 feet underground, the terms of the two written easement agreements are as definite as the nature of the work would permit. *Marshall v. Edlin*,

[6] https://www.merriam-webster.com/dictionary/temporary; https://www.dictionary.com/browse/temporary
[7] https://www.dictionary.com/browse/completion
[8] https://www.dictionary.com/browse/complete; https://www.merriam-webster.com/thesaurus/completed

690 S.W.2d 477, 480 (Mo. App. W.D. 1985); *State ex rel. Missouri Highway & Transp. Comm'n v. Pracht*, 665 S.W.2d 697, 699 (Mo. App. E.D. 1984).

We may look past the corners of the contract to ascertain the intent of the parties only if a contract is ambiguous. *Patterson*, 529 S.W.3d at 894. Where, as here, no ambiguity exists in the contract, the court determines the intention of the parties and the contract's clear meaning solely from the four corners of the contract itself. *Id.* The court will enforce the contract as written and will not resort to canons of construction. *Allen v. Cont'l W. Ins. Co.*, 436 S.W.3d 548, 554 (Mo. banc 2014). Evidence of how the contract was understood or acted upon by the parties is only used when the contract or a contract term is unclear. *Nickles v. Auntie Margaret Daycare Corp.*, 829 S.W.2d 614, 616 (Mo. App. E.D. 1992); *Smith v. Taylor-Morley, Inc.*, 929 S.W.2d 918, 922 (Mo. App. E.D. 1996). Extrinsic or parol evidence "may not be used to create ambiguity in an otherwise unambiguous contract or to show that an obligation is other than that expressed in the written agreement." *Kassebaum v. Kassebaum*, 42 S.W.3d 685, 693 (Mo. App. E.D. 2001).

We hold that the two written easement agreements are completely integrated and unambiguous. Thus, the parol evidence rule precludes evidence of MSD's purported representations.

We deny STL Riverview's point on appeal and affirm the circuit court's judgment.

_____
Angela T. Quigless, J.

Lisa P. Page, P.J., and Gary M. Gaertner, Jr., J.,

14